1    XAVIER BECERRA, State Bar No. 118517
     Attorney General of California
2    TAMI M. KRENZIN, State Bar No. 183925
     Deputy Attorney General
3    BRIAN R. MEANS, State Bar No. 158368
     Deputy Attorney General
4      1300 I Street, Suite 125
       P.O. Box 944255
5      Sacramento, CA 94244-2550
       Telephone: (916) 324-5254
6      Fax: (916) 324-2960
       E-mail: Brian.Means@doj.ca.gov
7    Attorneys for Respondent

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13   **SALVADOR LOPEZ,**                    2:16-cv-01310 MCE AC (HC)

14                          Petitioner,

15            v.                            **ANSWER TO PETITION FOR WRIT OF**
                                           **HABEAS CORPUS**
16   **PEOPLE OF THE STATE OF**
     **CALIFORNIA,**
17

18                          Respondent.

19

20

21

22

23

24

25

26

27

28

Page

Memorandum of Points and Authorities in Support of Answer to Petition for Writ of
    Habeas Corpus ............................................................................................................. 3

Statement of Facts ................................................................................................................. 3

Habeas Standards ................................................................................................................... 5

Argument ............................................................................................................................... 7

      I.     Ground one: Petitioner failed to demonstrate that he is entitled to habeas
           relief on the ground that he is actually innocent ................................................. 7

      II.    Grounds two and three: Petitioner failed to demonstrate that no reasonable
           jurist would agree with the state court that Petitioner was not denied his
           right to confrontation or the effective assistance of counsel................................. 9

           A.     Governing legal standards........................................................................ 10

           B.     Court of appeal ruling .............................................................................. 11

           C.     Analysis.................................................................................................... 17

      III.   Ground four: Petitioner failed to demonstrate that he is entitled to habeas
           relief on the ground that the trial court abused its discretion admitting
           evidence of his prior offenses and those of his family members ......................... 22

           A.     Court of appeal ruling .............................................................................. 22

           B.     Analysis.................................................................................................... 24

Conclusion ........................................................................................................................... 26

# TABLE OF AUTHORITIES

CASES

*Ake v. Oklahoma*
    470 U.S. 68 (1985) ..................................................................................................18

*Alberni v. McDaniel*
    458 F.3d 860 (9th Cir. 2006) ...................................................................................24

*Ben-Sholom v. Ayers*
    674 F.3d 1095 (9th Cir. 2012) ..................................................................................5

*Boykin v. Alabama*
    395 U.S. 238 (1969) ................................................................................................21

*Brecht v. Abrahamson*
    507 U.S. 619 (1993) ..........................................................................................11, 20

*Carey v. Musladin*
    549 U.S. 70 (2006) ...........................................................................................6, 8, 24

*Carriger v. Stewart*
    132 F.3d 463 (9th Cir. 1997) ....................................................................................9

*Cason v. Hedgpeth*
    2009 WL 1096209 (C.D. Cal. Apr. 22, 2009) .........................................................20

*Coleman v. Thompson*
    501 U.S. 722 (1991) ................................................................................................18

*Coley v. Gonzales*
    55 F.3d 1385 (9th Cir. 1995) ....................................................................................8

*Crawford v. Washington*
    541 U.S. 36 (2004) ................................................................................10, 17, 19, 20

*Cullen v. Pinholster*
    563 U.S. 170 (2011) .........................................................................6, 9, 19, 21

*Davis v. Blackburn*
    789 F.2d 350 (5th Cir. 1986) ...............................................................................8, 10

*Davis v. Washington*
    547 U.S. 813 (2006) ................................................................................................10

*Delaware v. Van Arsdall*
    475 U.S. 673 (1986) ................................................................................................11

**TABLE OF AUTHORITIES**
(continued)

*Delgadillo v. Woodford*
   527 F.3d 919 (9th Cir. 2008)................................................................10

*District Attorney's Office v. Osborne*
   557 U.S. 52 (2009).................................................................7, 8

*Dobbert v. Wainwright*
   468 U.S. 1231 (1984)...............................................................9

*Estelle v. McGuire*
   502 U.S. 62 (1991).................................................................24, 25

*Garceau v. Woodford*
   275 F.3d 769 (9th Cir. 2001)...................................................24

*Garnett v. Neven*
   408 Fed. Appx. 47 (9th Cir. 2011)...........................................8

*Giles v. California*
   554 U.S. 353 (2008)...............................................................10

*Greene v. Fisher*
   565 U.S. 34 (2011).................................................................5

*Harrington v. Richter*
   562 U.S. 86 (2011).................................................................6, 7, 21

*Herrera v. Collins*
   506 U.S. 390 (1993)...............................................................7, 8

*Holley v. Yarborough*
   568 F.3d 1091 (9th Cir. 2009)................................................24, 25

*House v. Bell*
   547 U.S. 518 (2006)...............................................................7, 8

*LaCrosse v. Kernan*
   244 F.3d 702 (9th Cir. 2001)...................................................18

*Lincoln v. Sunn*
   807 F.2d 805 (9th Cir. 1987)...................................................25

*Lockyer v. Andrade*
   538 U.S. 63 (2003).................................................................6

*Lopez v. Jacquez*
2010 WL 2650695 (E.D. Cal. July 1, 2010) ...............................................19

*McKenzie v. McCormick*
27 F.3d 1415 (9th Cir. 1994)........................................................................5

*McKinney v. Rees*
993 F.2d 1378 (9th Cir. 1993)....................................................................25

*McQuiggin v. Perkins*
133 S. Ct. 1924 (2013) .................................................................................8

*Mejia v. Garcia*
534 F.3d 1036 (9th Cir. 2008).....................................................................24

*Melendez-Diaz v. Massachusetts*
557 U.S. 305 (2009) ....................................................................................11

*Melendez v. Pliler*
288 F.3d 1120 (9th Cir. 2002).....................................................................19

*Michigan v. Long*
463 U.S. 1032 (1983) ..................................................................................18

*Morales v. Calderon*
85 F.3d 1387 (9th Cir. 1996).......................................................................18

*Moses v. Payne*
555 F.3d 742 (9th Cir. 2009).........................................................................5

*Murdoch v. Castro*
609 F.3d 983 (9th Cir. 2010).........................................................................6

*Murray v. Schriro*
746 F.3d 418 (9th Cir. 2014).............................................................9, 19, 25

*Noltie v. Peterson*
9 F.3d 802 (9th Cir. 1993)...........................................................................18

*Park v. California*
202 F.3d 1146 (2000)...................................................................................18

*Peole v. Vera*
15 Cal. 4th 269 (1997) ................................................................................18

iv

*People v. Williams*
  16 Cal. 4th 153 (1997) .......................................................................................18

*Poland v. Stewart*
  169 F.3d 573 (9th Cir. 1999).............................................................................18

*Rupe v. Wood*
  93 F.3d 1434 (9th Cir. 1996).............................................................................22

*Sistrunk v. Rozum*
  674 F.3d 181 (3d Cir. 2012)...............................................................................9

*Snook v. Wood*
  89 F.3d 605 (9th Cir. 1996).................................................................................5

*Strickland v. Washington*
  466 U.S. 668 (1984)...........................................................................................21

*United States v. Chambers*
  944 F.2d 1253 (6th Cir. 1991).............................................................................9

*United States v. LeMay*
  260 F.3d 1018 (9th Cir. 2001)...........................................................................25

*United States v. Lockett*
  919 F.2d 585 (9th Cir. 1990)...............................................................................8

*United States v. Puentes*
  50 F.3d 1567 (11th Cir. 1995).............................................................................8

*Wainwright v. Sykes*
  433 U.S. 72 (1977).............................................................................................17

*Walker v. Clark*
  2010 WL 1643580 (C.D. Cal. Feb. 18, 2010).................................................20

*White v. Woodall*
  ___ U.S. ___, 134 S. Ct. 1697 (2014)...............................................................6

*Williams v. Illinois*
  567 U.S. 50 (2012)......................................................................................11, 19

*Williams v. Taylor*
  529 U.S. 362 (2000).....................................................................................6, 19

*Wilson v. Henry*
   185 F.3d 986 (9th Cir. 1999)......................................................................21, 22

*Wood v. Hall*
   130 F.3d 373 (9th Cir. 1997)................................................................................18

*Wright v. Van Patten*
   552 U.S. 120 (2008)....................................................................5, 19, 20, 25

*Yarborough v. Alvarado*
   541 U.S. 652 (2004)..............................................................................6, 21

**STATUTES**

Title 28, United States Code
   § 2254(a).........................................................................................................5
   § 2254(d).....................................................................................................5, 6
   § 2254(d)(1).....................................................................................5, 21, 22, 24
   § 2254(d)(2).....................................................................................................5

California Penal Code
   § 186.22(a)......................................................................................................1
   § 186.22(b)(1)(C)............................................................................................1
   § 187.............................................................................................................1
   § 654.............................................................................................................1
   § 664.............................................................................................................1
   § 12022.5(a)(1)................................................................................................1
   § 12022.53(d)..................................................................................................1

California Evidence Code
   § 352...........................................................................................................25
   § 1101.........................................................................................................22
   § 1108.....................................................................................................24, 25

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Amend. VI .....................................................10, 21

1      Pursuant to the order of this Court, Respondent, Christian Pfeiffer, Warden, answers the

2      petition for writ of habeas corpus as follows:

3                                                    I.

4      Petitioner Salvador Lopez is lawfully confined by Respondent pursuant to a valid judgment

5      of the Superior Court of the State of California, County of Sutter, Case No. CRF081476.

6                                                    II.

7      Petitioner was charged with attempted premeditated murder (Cal. Penal Code §§ 664/187)

8      and participation in a criminal street gang (Cal. Penal Code § 186.22(a)). As to the attempted

9      murder charge, it was further alleged that Petitioner intentionally and personally discharged a

10     firearm, causing great bodily injury (Cal. Penal Code § 12022.53(d)), and that he committed the

11     offense for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)(C)). As to the

12     participation in a street gang charge, it was further alleged that Petitioner personally used a

13     firearm. (Cal. Penal Code § 12022.5(a)(1).)

14     A jury found Petitioner guilty on both counts and found all the enhancement allegations

15     true. After finding the information had not properly alleged premeditated attempted murder, the

16     trial court sentenced Petitioner to the upper term of nine years for attempted murder plus 25 years

17     to life for the firearm enhancement, and the upper term of three years for active participation in a

18     street gang plus 10 years for the firearm enhancement. The sentence on the street gang conviction

19     was stayed. (Cal. Penal Code § 654.) The street gang enhancement allegation was struck in the

20     interest of justice. Various fines and fees were imposed. (Ex. 1.)

21                                                   III.

22     On February 18, 2015, the California Court of Appeal, Third Appellate District, finding no

23     prejudicial error, affirmed the judgment in a reasoned decision.[1] (Ex. 1.) On or about

24     February 27, 2015, Petitioner filed a Petition for Rehearing. (Lod. Doc. 6.) The petition was

25     denied March 20, 2015. (Ex. 2.)

26

27     _____

28         [1] The parties' appellate briefs are provided as lodged documents one through five.

IV.

On March 26, 2015, Petitioner filed a petition for review in the California Supreme Court. (Lod. Doc. 7.) The court denied the petition on June 10, 2015. (Ex. 3.)

V.

On August 17, 2015, Petitioner filed a habeas corpus petition in the Sutter County Superior Court. (Lod. Doc. 8.) The petition was denied November 3, 2015 (Ex. 4), and an amended order denying the petition was filed November 20, 2015 (Ex. 5).

VI.

Petitioner filed two habeas corpus petitions in the California Court of Appeal. The first was filed on January 31, 2014, before the California Court of Appeal had affirmed the judgment on direct appeal. (Lod. Doc. 9.) This petition was denied on February 13, 2014. (Ex. 6.) The second petition was filed January 27, 2016. (Lod. Doc. 10.) This petition was summarily denied February 4, 2016. (Ex. 7.)

VII.

On March 21, 2016, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Lod. Doc. 11.) The petition was summarily denied on May 25, 2016. (Ex. 8.)

VIII.

Respondent does not dispute that the stated grounds for relief in the federal petition are exhausted.

IX.

Respondent denies that Petitioner is entitled to relief.

X.

In addition to the pleadings and orders identified above, the pertinent state court record consists of the following:

Reporter's Transcript Vol. I of III (pages 1 through 292) (Lod. Doc. 12);

Reporter's Transcript Vol. II of III (pages 293 through 587) (Lod. Doc. 13);

Reporter's Transcript Vol. III of III (pages 588 through 760) (Lod. Doc. 14);

Reporter's Transcript (Augmented) Vol. I of I (pages 1 through 273) (Lod. Doc. 15);

2

1     Clerk's Transcript (Vol. I of I) (pages 1-303) (Lod. Doc. 16);

2     Clerk's Augmented Transcript (Vol. I of IV) (pages 1-300) (Lod. Doc. 17);

3     Clerk's Augmented Transcript (Vol. II of IV) (pages 301-564) (Lod. Doc. 18);

4     Clerk's Augmented Transcript (Vol. III of IV) (pages 565-872) (Lod. Doc. 19); and

5     Clerk's Augmented Transcript (Vol. IV of IV) (pages 873-1080) (Lod. Doc. 20).

6     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

7

8     **STATEMENT OF FACTS**

9     This statement of facts is taken from the unpublished opinion of the California Third

10 District Court of Appeal:

11     Josiah Pacheco, a Norteño gang member, was walking down the street when a
green sedan with three or four people suddenly stopped near him. Three people got
out of the car and one said, "What's up?" to Pacheco. Pacheco responded,
"[N]othing." Then one started shooting at Pacheco. Pacheco stated he was shot by
"[s]ome Soreno [sic ]." He also identified defendant as the shooter. Pacheco knew
defendant from time they had spent together in juvenile hall. Pacheco reported
defendant had "a problem" with Pacheco, because Pacheco had beaten up defendant's
older brother. Pacheco also admitted he used to "gang bang" with the "Norte."

15     The day after the shooting, Pacheco was interviewed by police and again
identified defendant as the shooter. He also positively identified defendant as the
shooter in two separate photographic lineups. Pacheco stated he did not want to press
charges because he did not want a reputation. Over the course of further interviews,
Pacheco identified defendant as the shooter on two more occasions and stated that the
people in the car were "southerners." He also revealed that defendant's first name was
Salvador.

19     Law enforcement arranged for Pacheco to participate in a pretext phone call
with defendant. Throughout the phone call, defendant denied shooting Pacheco.
Defendant did, however, admit he was a gang member.

21     Prior to trial, Pacheco repeatedly told law enforcement he did not want to press
charges against defendant and that at trial he would deny defendant had shot him. He
also expressed disdain for "snitches" and reported a "snitch" would be killed by his
own gang. At trial, Pacheco recanted his earlier statements identifying defendant as
the shooter. He testified defendant did not shoot him, and he did not know who had
shot him. He acknowledged that if he did know who shot him, he would not confirm
that law enforcement had the shooter; but in any event, defendant was not the shooter.
Pacheco also denied having previously fought with defendant's brother.

26     Officer Aaron Moe testified as an expert in the Sureño criminal street gangs. He
observed the area where the shooting occurred was known for gang-related activity.
Moe testified gang members commit crimes to earn respect, and killing a rival gang
member would significantly increase a gang member's status. The best way for gang
members to earn respect and increase their status is to commit acts of violence. The
more violent the crime, the more status is earned. Sureños and Norteños are rival

3

gangs. Moe explained that many current gang members are "multi-generational or the brothers and sisters growing up, emulating what older family members are doing." Gang membership can be a "family tradition," and young children have demonstrated significant gang knowledge based on education from their older brothers, sisters, uncles, cousins, or parents.

Moe also testified that the Sureño gang's primary activities are crimes of violence. Defendant had repeatedly admitted to Moe he was a gang member and stated he had been one since sixth grade. Defendant also had a gang-related tattoo, and multiple photographs showed him demonstrating gang hand signs. In December 2007 defendant's brother Ignacio, his cousin Diego, and another Sureño gang member, Fidencio Mendoza, assaulted a rival Norteño gang member by shooting him. As a result, Ignacio and Mendoza were convicted of assault with a firearm. In November 2006 officers conducted a traffic stop on a vehicle containing defendant and other Sureño gang members. Pedro Alvarado was a passenger, and officers found him carrying a loaded firearm. As a result, Alvarado was convicted of carrying a loaded firearm in public. Defendant was adjudicated a ward of the court for carrying a concealed weapon in a vehicle. Defendant was also involved in an incident in which two Norteños were assaulted and property taken from them. Defendant assaulted one of the victims with a board. The people convicted of this offense were members of two local Sureño gangs.

Moe concluded that on March 12, 2008, defendant was an active participant in the Sureño criminal street gang. Based on the fact that the victim was a documented Norteño gang member and the assault was committed by a Sureño gang member with a handgun, Moe opined that a hypothetical offense resembling the facts of this case would have been committed for the benefit of, in association with, or at the direction of the Sureño criminal street gang.

Moe also offered an explanation for Pacheco's reticence to cooperate with law enforcement as the trial approached. Gang members had told Moe that when a gang member like Pacheco cooperates with law enforcement, he loses respect within the gang structure. Accordingly, the majority of victims who are gang members do not cooperate with the prosecution.

Defendant denied shooting Pacheco. He claimed he was at home babysitting his younger brother. He admitted telling Moe that he is a Sureño, but he claimed that to him that simply meant he was from the south, Mexico. He denied ever telling Moe he was in a gang. He admitted associating with known gang members and making gang signs in photographs, but he claimed that was just to "fit in." Defendant admitted his brothers, Ignacio and Juan, were Sureño gang members but claimed they had dropped out. He admitted he had a conviction for battery with serious bodily injury and a gang enhancement. He stated he had stabbed a rival gang member "to be cool." He also got "13" tattoos when he was in juvenile hall because he thought it was "cool." [1] Defendant acknowledged that when he was younger, he wanted to be in the gang, but ultimately that had gotten him into trouble. Specifically, he had admitted being in possession of a gun after being told he could not win at trial and was sent to a youth guidance center. Since his release from the guidance center he had tried, albeit unsuccessfully, to stay out of trouble. He claimed the "trouble" was not gang related. He acknowledged he had seen Pacheco somewhere but did not recall that Pacheco had ever beaten up his brother. Defendant claimed that in the phone call with Pacheco, he had admitted being a gang member because he was "playing along" with the caller.

4

[FN 1] The number 13 is important to Sureños. It represents the 13th letter of the alphabet, "M," which stands for "Mexican Mafia." Sureños affiliate themselves with the Mexican Mafia.

(Ex. 1.)

## HABEAS STANDARDS

Habeas relief may be granted only on the ground that Petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). "State court judgments of conviction and sentence carry the presumption of finality and legality," and as a result "[i]t is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties of the United States." *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996). This burden of proof must be carried by a preponderance of the evidence. *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994); *accord Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

Moreover, cases governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), like this one, are subject to stringent federal standards of review. Under AEDPA, a court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

Under § 2254(d)(1), the relevant Supreme Court precedent includes only the decisions in existence as of the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 44 (2011). Thus, Supreme Court cases decided after the state court's decision are not clearly established precedent under § 2254(d)(1) for purposes of evaluating whether the state court reasonably applied such precedent.

A Supreme Court precedent is not clearly established law under § 2254(d)(1) unless it "squarely addresses the issue" in the case before the state court, *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam), or "establish[es] a legal principle that 'clearly extends'" to the case before the state court, *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (quoting *Van*

*Patten*, 552 U.S. at 123); *see also Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (holding that Supreme Court cases evaluating state-sponsored courtroom conduct were not clearly established law governing private actor courtroom conduct). "[W]hen a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010). "[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1706 (2014) (internal quotation marks omitted). A principle is clearly established law governing the case "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." *Id*. at 1706-07 (internal quotation marks omitted).

A state court decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" of Supreme Court precedent is not one that is merely "incorrect or erroneous," *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). If "'fairminded jurists could disagree' on the correctness of the state court's decision," that decision is not unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A state court summary denial is an "unreasonable application" of Supreme Court precedent only if "there was no reasonable basis," *id*. at 98, for the decision in light of the "arguments or theories [that] . . . could have supported[ ] the state court's decision," *id*. at 102.

The Supreme Court has made clear that § 2254(d) sets forth a "highly deferential standard[,] . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings," but only "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Richter*, 562 U.S. at 102. "[E]ven a

6

1  strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*.

2  At bottom, "[i]f this standard is difficult to meet, that is because it was meant to be." *Id*. at 102.

3  **ARGUMENT**

4  **I.  GROUND ONE: PETITIONER FAILED TO DEMONSTRATE THAT HE IS ENTITLED TO**
   **HABEAS RELIEF ON THE GROUND THAT HE IS ACTUALLY INNOCENT**

5

6       Petitioner argues that his state and federal due process rights were violated because he is

7  "innocent of committing the charged crime." (Pet at 1.) Petitioner's claim is based on a post-trial

8  declaration by Josiah Pacheco. In the declaration, Pacheco alleges, among other things, that he

9  was not shot by Petitioner, but as the result of "a drug deal gone bad." He claims he was afraid to

10  tell the truth for fear of being arrested for perjury.

11       Petitioner presented this claim to the California Superior Court in a petition for writ of

12  habeas corpus. (Lod. Doc. 8.) The court denied the claim on the merits, stating:

13           Petitioner has offered no newly discovered evidence that could possibly cast
             fundamental doubt on the accuracy and reliability of the proceedings. Witness
14           Pacheco maintained during the trial that the defendant did not shoot him. The jury
             obviously did not find the witness' testimony credible. There is no reason to believe
15           that the "new" details offered by the witness would have produced a different result.

16  (Ex. 5.) Petitioner then presented his claim to the California Court of Appeal (Lod. Doc. 10), and

17  then the California Supreme Court (Lod. Doc. 11). Both courts summarily denied the claim on the

18  merits. (Exs. 7, 8.)

19       Petitioner is not entitled to relief. Essentially, Petitioner's claim is one of actual innocence.

20  Under existing Supreme Court precedent, however, it is an open question whether a freestanding

21  "actual innocence" claim is cognizable under federal habeas law. *See District Attorney's Office v.*

22  *Osborne*, 557 U.S. 52, 71 (2009); *House v. Bell*, 547 U.S. 518, 554-55 (2006); *Herrera v. Collins*,

23  506 U.S. 390, 400-17 (1993). In *Herrera*, the Supreme Court stated: "Claims of actual innocence

24  based on newly discovered evidence have never been held to state a ground for federal habeas

25  relief absent an independent constitutional violation occurring in the underlying state criminal

26  proceeding." 506 U.S. at 400. The Court assumed, without deciding, that a freestanding actual

27  innocence claim might warrant federal habeas relief in a capital case, but only upon an

28  "extraordinarily high" and "truly persuasive" threshold showing. *Id*. at 417. Thirteen years later,

7

in *House*, the Supreme Court expressly declined to resolve the issue left unresolved in *Herrera*, stating only that the prisoner had not satisfied the "extraordinarily high" burden for a "hypothetical freestanding innocence claim." 547 U.S. at 554-55. In *Osborne*, the Supreme Court declared that the existence of a federal right "to be released upon proof of 'actual innocence' "was "an open question," but once again found it unnecessary to resolve the issue, noting only "the difficult questions such a right would pose and the high standard any claimant would have to meet." 557 U.S. at 71. More recently, the Supreme Court in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), again recognized that it had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *Id.* at 1931.

In light of this absence of Supreme Court precedent clearly establishing that actual innocence claims are cognizable in non-capital federal habeas cases, Petitioner is barred from obtaining relief. *Musladin*, 549 U.S. at 70 (applying "clearly established" requirement); *see also Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) ("Coley seems to be making the claim that he is factually innocent—but that claim alone is not reviewable on habeas"); *Garnett v. Neven*, 408 Fed. Appx. 47, 47 n.1 (9th Cir. 2011) ("the Supreme Court has not clearly established whether a freestanding claim of actual innocence exists").

In any event, a prosecution witness's subsequent recantation does not constitute "newly discovered evidence" because trial cross-examination affords defense counsel the opportunity to discover and reveal the motivation for and the alleged falsity of the witness's trial testimony. *See United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995) ("This court has held that a retraction of an earlier recantation of trial testimony does not qualify as newly discovered evidence."); *Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir. 1986); *cf. United States v. Lockett*, 919 F.2d 585, 591-92 (9th Cir. 1990) (holding that when a potential witness refuses to testify at a criminal trial but later discloses evidence favorable to the defendant, the disclosure does not constitute "newly discovered evidence").

Moreover, as the California Superior Court concluded, Pacheco's declaration did not "cast fundamental doubt on the accuracy and reliability of the proceedings." (Ex. 5.) Pacheco testified that Petitioner was not the one that had shot him, and the jury disbelieved his testimony. There is

8

no basis for concluding that the jury would find Pacheco's more recent version of events any more credible. *Dobbert v. Wainwright*, 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed with great suspicion").[2] Petitioner has not shown that no reasonable jurist—not even one—could agree with the California Superior Court's ruling that Pacheco's declaration did not demonstrate that Petitioner is factually innocent. *See Murray v. Schriro*, 746 F.3d 418, 466 (9th Cir. 2014) ("Relief is warranted only if no reasonable jurists could disagree that the state court erred.") (citing *Pinholster*, 563 U.S. at 188).

## II.    GROUNDS TWO AND THREE: PETITIONER FAILED TO DEMONSTRATE THAT NO REASONABLE JURIST WOULD AGREE WITH THE STATE COURT THAT PETITIONER WAS NOT DENIED HIS RIGHT TO CONFRONTATION OR THE EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that his right to confrontation was violated by the admission of Officer Moe's testimony that Petitioner's brothers and Mendoza admitted their gang membership. (Pet., Ground Two.) Petitioner also contends that Officer Moe's testimony recounting the contents of a sheriff's department report describing Petitioner's participation in a battery with serious bodily injury was improperly admitted. (Pet., Ground Three.) Alternatively, to the extent that counsel failed to object to the admission of these statements, Petitioner asserts that he was denied effective assistance of counsel. (Pet., Grounds Two and Three.)

These claims were presented to the California Court of Appeal on direct review. (Lod. Doc. 1 at 38.) The Court of Appeal denied relief on the ground that Petitioner failed to preserve the right to challenge the statements by a timely and specific objection based on the right to confrontation. The Court of Appeal further concluded that any challenge would have been futile as the statements were not rendered inadmissible by the Confrontation Clause; thus, counsel's

---

[2] *See also Carriger v. Stewart*, 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski, J., dissenting) ("Recanting testimony has long been disfavored as a basis for a claim of innocence" and is viewed by appellate courts, "even on direct review, with extreme suspicion"); *accord Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) ("Courts have historically viewed recantation testimony with great suspicion"); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) ("Recanting affidavits and witnesses are viewed with extreme suspicion.").

failure to object did not constitute ineffective assistance. (Ex. 1 at 13.) The California Supreme Court denied review. (Ex. 3.)

## A.   Governing Legal Standards

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with the witnesses against him ...." United States Const., Amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant...had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *Davis v. Washington*, 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused, i.e., those who 'bear testimony.'" *Crawford*, 541 U.S. at 51 (citation omitted); *Davis*, 547 U.S. at 823-24. "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (citation and some internal punctuation omitted); *Davis*, 547 U.S. at 824. As the *Davis* court explained:

> A critical portion of [*Crawford*'s] holding ... is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

*Davis*, 547 U.S. at 821 (citation omitted). Thus, nontestimonial statements do not implicate the Confrontation Clause. *Giles v. California*, 554 U.S. 353, 376 (2008). Moreover, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9.

"Although *Crawford* did not define 'testimonial' or 'nontestimonial,' it made clear that the Confrontation Clause was concerned with 'testimony,' which 'is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,' and noted that '[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.'" *Delgadillo v. Woodford*, 527 F.3d 919, 927 (9th Cir. 2008) (quoting *Crawford*, 541 U.S. at 51). Subsequent Supreme Court cases have suggested that a statement is "testimonial" if its declarant knew, or should have

10

known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation into past events. *See Williams v. Illinois*, 567 U.S. 50, __, 132 S. Ct. 2221, 2242 (2012) ("The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions."); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) (opining that a statement is "testimonial" if it was made for an "evidentiary purpose" and "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial") (internal citation and quotation marks omitted).

Finally, a Confrontation Clause violation is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

## B.    Court of Appeal Ruling

The California Court of Appeal provided the following explanation in denying Petitioner's claim:

> Defendant contends "the trial court prejudicially erred and violated [his] confrontation rights by admitting evidence of statements made out of court by persons not presented for confrontation." Specifically, he complains about the admission of statements by defendant's brothers and Mendoza admitting that they were gang members and identifying their particular subsets. He also contends Moe's testimony recounting the contents of a sheriff's department report describing defendant's participation in the battery with serious bodily injury was improperly admitted. Alternatively, to the extent that counsel failed to object to the admission of these statements, defendant asserts he was denied effective assistance of counsel. We will conclude that defendant failed to preserve the right to challenge the statements by a timely and specific objection based on the confrontation clause. Moreover, any challenge would have been futile as the statements were not rendered inadmissible by the confrontation clause; thus, his counsel's failure to object did not constitute ineffective assistance.
>
> A. The Confrontation Clause Generally
>
> The confrontation clause of the Sixth Amendment to the United States Constitution provides that "'[i]n all criminal prosecutions, the accused shall enjoy the

11

right ... to be confronted with the witnesses against him.'" (*Crawford v. Washington* (2004) 541 U.S. 36, 42 [158 L.Ed.2d 177] (*Crawford*).) The confrontation clause has traditionally barred "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Id*. at pp. 53–54.) "Under *Crawford*, the crucial determination about whether the admission of an out-of-court statement violates the confrontation clause is whether the out-of-court statement is testimonial or nontestimonial." (*People v. Geier* (2007) 41 Cal.4th 555, 597, overruled on other grounds in *Melendez–Diaz v. Massachusetts* (2009) 557 U.S. 305 [174 L.Ed.2d 314] (*Melendez–Diaz*).)

*Crawford* did not specify what constitutes a testimonial statement for purposes of the confrontation clause but offered examples of the "[v]arious formulations of this core class of 'testimonial' statements," i.e., "'ex parte in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' [citation]; 'extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation]; [and] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' [citation]." (*Crawford, supra*, 541 U.S. at pp. 51-52.)

The high court subsequently explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822 [165 L.Ed.2d 224]; *see also Michigan v. Bryant* (2011) 562 U.S. 344 [131 S.Ct. 1143, 1157, 179 L.Ed.2d 93].)

The United States Supreme Court continued to grapple with what constitutes testimonial statements in *Melendez–Diaz, supra*, 557 U.S. 305; *Bullcoming v. New Mexico* (2011) 564 U.S. ___ [131 S.Ct. 2705, 180 L.Ed.2d 610]; and *Williams v. Illinois* (2012) 567 U.S. ___ [132 S.Ct. 2221, 183 L.Ed.2d 89], but reached little further consensus. In short, the United States Supreme Court has not provided an exhaustive or comprehensive list of what constitutes a testimonial statement.

The California Supreme Court has carefully examined the various approaches adopted by the United States Supreme Court in those cases following *Crawford* in a trilogy of its own cases decided in 2012: *People v. Lopez* (2012) 55 Cal.4th 569, *People v. Dungo* (2012) 55 Cal.4th 608, and *People v. Rutterschmidt* (2012) 55 Cal.4th 650. The California Supreme Court recognized that the United States Supreme Court had not agreed upon a definition of "testimonial" for confrontation clause purposes. (*Lopez, supra*, 55 Cal.4th at p. 581.) Based on its reading of the United States Supreme Court cases, the *Lopez* court identified two "critical components" required to find a statement testimonial: (1) the statement must have been made with some degree of formality or solemnity (*id*. at pp. 581–582), and (2) "all nine high court justices agree that an out-of-court statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution, but they do not agree on what the statement's primary purpose must be" (*id*. at p. 582).

B. Trial Testimony and Defendant's Objections

Prior to trial, defendant filed a "Trial Brief re: Admissibility of Gang Evidence." Within that brief, under the heading "Incompetent Hearsay Evidence Must be Excluded at Trial," defendant argued "[s]everal of the proffered incidents rely heavily upon statements made by the defendant and others. Because most of those statements are self-serving statements, containing both exculpatory and inculpatory information, the statements in their entirety should be excluded at trial.

"Similarly, California courts, in the context of gang expert testimony and evidence, have excluded gang evidence that is unreliable. For example, courts have held that a gang expert can not [sic ] offer non-specific hearsay regarding an incident unless he has personal knowledge of the incident."

Under the heading "The Gang Expert Cannot Render an Opinion Based on Incompetent Hearsay," defendant averred, "It is anticipated that the expert in this case may attempt to rely on hearsay evidence that is irrelevant, unreliable and prejudicial. Defendant objects first on hearsay grounds." Defendant did not mention *Crawford,* supra, 541 U.S. 36 or the confrontation clause in his trial brief or in argument on the issues.

Prior to Moe's testifying as an expert witness, the trial court conducted an Evidence Code section 402 hearing "to get to the hearsay aspects and other objections that [defense counsel raised] in his trial brief." Defense counsel objected to any testimony by Moe related to gang activity, claiming there was no evidence the shooting was gang related. The trial court overruled the objection. At no time during that hearing was there any discussion of *Crawford* or the confrontation clause.

As relevant to these claims on appeal, Moe testified his general duties in the gang suppression unit are to "conduct practical enforcement, contact gang members in the local area, contact and document their activities"; he reviewed letters by gang members and associates, received outside agency reports regarding arrests or involving gang members, participated in gang-related probation searches and gang sweeps, reviewed field contact reports detailing contacts with individuals in the community, including information about tattoos, clothing and associates, and he had had contact with over 1,000 gang members. As a gang officer, he spoke with gang members and associates, sometimes daily. For the most part, they were willing to speak with him on the street and were open about their gang memberships. They were less open and cooperative about admitting their gang memberships when they were being interviewed or interrogated. Moe would speak with them about their gang affiliations, their associates, how long they had been in their gangs, their methods of joining the gangs, and what they did to earn their "stripes and respect." He would also ask about current trends, symbols, and rivalries. The court qualified Moe as an expert in the Sureño criminal street gangs.

Moe described a number of photographs depicting defendant, his family members, and other documented Sureño gang members wearing gang-related clothing, adorned with gang-related tattoos, and demonstrating gang hand signs. In one, defendant was demonstrating a hand sign for West Myrtle, a subset of the Sureños. Also in the picture were two documented Sureño gang members and one admitted gang member. Another person in the photograph was throwing a gang-related "13" hand sign and had gang tattoos. Two of the others pictured had gang-related charges pending against them.

13

In another photograph, defendant was demonstrating the "13" hand sign. Next to him was a documented Sureño gang member, demonstrating the WM (for West Myrtle) hand sign and wearing gang-related clothing. Moe also described a photograph of defendant and Pedro Alvarado that officers found during a traffic stop. During the traffic stop, Alvarado admitted to being a gang member and had gang-related tattoos. Also depicted in the photograph were Jose Mangana and Eddie Lopez. Mangana and Alvarado were throwing gang signs together that indicated they were Sureños and part of the West Myrtle set. Another picture depicted defendant, his older brother Juan, and two others. When asked if Juan had "admitted to being a gang member," Moe answered, "Yes." Specifically, Juan was part of the West Myrtle set. Another photograph depicted defendant and Juan wearing gang-related clothing and demonstrating gang symbols. Defendant's brother Ignacio was in a photograph with Michael Flores, with the words "West Myrtle" and the number "13" on the photograph. In another picture of defendant, Ignacio, and Flores, defendant and his brother were throwing the WM symbol and the picture had a 13 on it.

Moe testified about an assault with a firearm in which both Fidencio Mendoza and defendant's brother Ignacio were involved in shooting Isaac Gomez. Each was convicted of assault with a firearm and commission of an act for the benefit of a street gang. Moe had personally spoken with Ignacio several times, and Ignacio had admitted his gang membership, claiming West Myrtle Sureños. Moe had also spoken with Mendoza, who admitted his gang membership, claiming YC Trece. It would be common for them to commit crimes together because the two groups get along and associate with each other.

Moe also testified about a case in which defendant was adjudicated for battery with serious injury and a gang enhancement. Defendant entered admissions to the offenses and as a condition of probation was ordered to register as an illegal street gang member. Moe also testified as to the contents of a sheriff's report describing the facts leading to that adjudication. Two documented Norteño members, Benny Castro and Ricky Diaz, were walking when they saw approximately 10 subjects wearing blue. As Norteños, they assumed the subjects wearing blue were Sureños. They tried to flee, but the group caught them. One of the group asked if Castro and Diaz were gang members. They answered no. The group then assaulted Castro and Diaz, hitting them several times with hands, feet, and boards. At the end of the assault, Castro's shoes and Diaz's cell phone and jacket were stolen. Defendant's involvement in the assault was "that he was identified by one of the co-defendants, Anthony Mendoza, and Benny Castro, as being involved. Benny Castro identified Salvador as the subject that hit him with the board." Defense counsel objected on hearsay grounds to the testimony detailing defendant's involvement in the assault. The trial court overruled the objection. There was no objection on the basis of *Crawford* or the confrontation clause. All of the juveniles convicted in that case were members of either the YC Trece or West Myrtle Sureños.

Moe testified further that defendant had admitted to being a gang member as early as 2006. Defendant stated he had been a member since sixth grade. His two older brothers and two cousins were also active members in the Sureño criminal street gang.

Moe offered an opinion that defendant was involved in criminal street gang activity and was an active participant in the Sureño street gang. He based this opinion on the fact that defendant was continually in contact with known Sureño gang members, had been actively participating with them in the offenses he had been arrested for, had knowledge of and the ability to demonstrate gang-related hand signs,

had gang-related tattoos, and the fact that he had family members involved in the gang.

C. Defendant's Confrontation Clause Claims Were Forfeited by His Failure to Make a Specific and Timely Objection

"The right to confrontation may, of course, be [forfeited], including by failure to object to the offending evidence...." (*Melendez–Diaz, supra*, 557 U.S. at p. 314, fn. 3; see also Evid.Code, § 353.) In California, "[t]he general rule is that 'when an in limine ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal' (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3 [251 Cal.Rptr. 278, 760 P.2d 475] ), although a sufficiently definite and express ruling on a motion in limine may also serve to preserve a claim (*People v. Ramos, supra*, 15 Cal.4th at p. 1171)." (*People v. Brown* (2003) 31 Cal.4th 518, 547.)

"[A] motion in limine to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context. When such a motion is made and denied, the issue is preserved for appeal. On the other hand, if a motion in limine does not satisfy each of these requirements, a proper objection satisfying Evidence Code section 353 must be made to preserve the evidentiary issue for appeal." (*People v. Morris* (1991) 53 Cal.3d 152, 190, overruled on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) A blanket, pretrial objection to all "hearsay" evidence proffered under the "guise" of expert testimony is not sufficient to preserve a confrontation claim because the admission of out-of-court statements does not necessarily implicate the confrontation clause; to implicate the confrontation clause, the statements must be both hearsay and testimonial. (*Crawford, supra*, 541 U.S. at pp. 51, 59–60 & fn. 9; *see People v. Loy* (2011) 52 Cal.4th 46, 66 ["'Not all erroneous admissions of hearsay violate the confrontation clause.... Only the admission of testimonial hearsay statements violates the confrontation clause....' [Citations.]"].) Further, a global hearsay or Evidence Code section 352 objection to the admission of evidence on the basis of an expert's opinion does not allow a particular out-of-court statement to be considered in its appropriate context with regard to whether it is in fact testimonial.

"Under California law, error in admitting evidence may not be the basis for reversing a judgment or setting aside a verdict unless 'an objection to or a motion to exclude or to strike the evidence ... was timely made and so stated as to make clear the specific ground of the objection or motion ....' (Evid.Code, § 353, subd. (a), italics added [by *Zamudio*].) 'In accordance with this statute, [the California Supreme Court has] consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable. [Citations.]' (*People v. Seijas* (2005) 36 Cal.4th 291, 302 [30 Cal.Rptr.3d 493, 114 P.3d 742].) Although no 'particular form of objection' is required, the objection must 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 354; *see* Assem. Com. on Judiciary com., 29B pt. 1A West's Ann. Evid.Code (2011 ed.) foll. § 353, p. 599.) "A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim

15

for appeal." (*People v. Marks* (2003) 31 Cal.4th 197, 228.) In general, where a defendant does not expressly object on confrontation grounds at trial, the constitutional claim is not preserved for appeal. (*See Melendez–Diaz, supra,* 557 U.S. at p. 314, fn. 3; *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14 (*Catlin*); Evid.Code, § 353.)

Thus, to preserve a claim of *Crawford* error, defendant was required to make timely and specific objection to identified evidence, rather than a sweeping motion to exclude a nebulous body of out-of-court statements relied upon by an expert in reaching an opinion. Where such an objection is made, the prosecution has the opportunity to show that a particular out-of-court statement is not testimonial and the trial court can then determine, in the first instance and in the appropriate context, whether the challenged statement is testimonial.

Here, defendant did not make any objection to any of Moe's testimony on the basis of *Crawford* or the confrontation clause. Rather, during trial, he made only a general hearsay objection to Moe's testimony relaying the contents of the sheriff's report. Because of defendant's failure to raise a timely and specific *Crawford* objection in the trial court, his claims on appeal regarding *Crawford* and the confrontation clause are forfeited.

D. In Any Event, Defendant's Confrontation Rights Were Not Violated

To prevail on a claim of ineffective assistance of counsel, defendant must establish both that counsel's performance was deficient and the errors were prejudicial. If he fails to establish one prong, we need not address the other. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) Defendant cannot meet that burden here. Defendant claims that counsel was ineffective for failing to object to the admission of Moe's testimony that Juan, Ignacio, and Mendoza had admitted to him they were gang members. As to these claims, we find the statements were not testimonial and therefore Crawford does not apply. Defendant also contends counsel was ineffective for failing to object on confrontation clause grounds to Moe's testimony setting forth the contents of the sheriff's report detailing the facts underlying defendant's juvenile adjudication for battery with great bodily injury and a gang enhancement. However, as to this testimony, defendant had previously waived his confrontation rights as to those charges when he entered an admission to the offenses. An objection based on the confrontation clause would have been without merit.

*Admissions to gang membership were not testimonial.*

Moe testified he spoke with gang members daily and they were willing to speak with him openly about their gang memberships. He also testified Juan, Ignacio, and Mendoza had admitted their gang memberships. There was, however, no indication in the testimony about the context of those conversations or the circumstances under which they took place. There is nothing in the record that indicates the conversations occurred as part of a police interrogation, had any degree of formality or solemnity, or were procured with the primary purpose of creating an out-of-court substitute for trial testimony. (*People v. Valadez* (2013) 220 Cal.App.4th 16, 36 (*Valadez*).) In fact, Moe's testimony that gang members disclaim their gang memberships in the context of interrogations and police interviews suggests the contrary.

Not every conversation between a police officer and a gang member is necessarily conducted with the purpose of creating a testimonial substitute for use in a

16

future prosecution. Police officers may have conversations with gang members for multiple reasons. "Day in and day out such information would be useful to the police as part of their general community policing responsibilities quite separate from any use in some unspecified criminal prosecution." (*Valadez, supra*, 220 Cal.App.4th at p. 36.) The information could also be gathered to deter future criminal activity or maintain institutional security or safety of those already incarcerated. Given Moe's testimony that he had many casual, consensual conversations with gang members in which they openly admitted their gang memberships, we cannot conclude Moe's multiple conversations with Ignacio, Juan, and Mendoza were testimonial. Because the statements of Ignacio, Juan, and Mendoza admitting their gang memberships were not testimonial, counsel was not ineffective in failing to raise a confrontation clause objection.

> *Confrontation rights as to juvenile adjudication waived.*

Defendant was adjudicated for battery with great bodily injury and a gang enhancement in 2005 based on his admission to both offenses. In juvenile proceedings, the court must explicitly advise the minor of his right to confront and cross-examine witnesses, and in making an admission to the charges, the minor must waive those rights. The court is required to make an explicit finding that the minor waived his right to confront and cross-examine witnesses. (Cal. Rules of Court, rule 5.778.)

*Crawford* is not violated if the defendant had a prior opportunity to cross-examine the declarant. (*People v. Angulo* (2005) 129 Cal.App.4th 1349, 1368.) Here, defendant had the opportunity to confront and cross-examine the victims and the officers in the juvenile case when the matters were being adjudicated in the juvenile courts in 2005 by going to trial on the charges. By electing not to do so, he necessarily waived his right of confrontation. (*Ibid.*) The right to confrontation is not Lazarus-like, resurrected after it is waived when the defendant is charged with additional offenses.

Here, defendant's confrontation rights were satisfied in the juvenile proceeding. He waived them. He cannot now reclaim them. Accordingly, counsel was not ineffective for failing to raise a *Crawford* objection to the testimony regarding the sheriff's report.

(Ex 1 at 13-23.)

## C.    Analysis

Petitioner failed to demonstrate that he is entitled to federal habeas relief. To begin with,

Petitioner's right-to-confrontation claim is procedurally barred. As the California of Appeal

found, because Petitioner "did not make any objection to any of Moe's testimony on the basis of

*Crawford* or the confrontation clause, . . . his claim on appeal regarding *Crawford* and the

confrontation clause are forfeited." (Ex. 1 at 19-21.)

State courts may decline to review a claim based on a procedural default. *Wainwright v.*

*Sykes*, 433 U.S. 72, 86-87 (1977). Federal courts "will not review a question of federal law

17

decided by a state court if the decision of that court rests on a state law ground that is independent

of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S.

722, 729 (1991); *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *see Park v. California*,

202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas

petition if the petitioner has defaulted on the particular state's procedural requirements. ..."). If the

court finds an independent and adequate state procedural ground, "federal habeas review is barred

unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or

demonstrate that the failure to consider the claims will result in a fundamental miscarriage of

justice." *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993); *Coleman*, 501 U.S. at 750; *Park*,

202 F.3d at 1150.

For the procedural default doctrine to apply and thereby bar federal review, the state court

determination of default must be grounded in state law that is both adequate to support the

judgment and independent of federal law. *Coleman*, 501 U.S. at 729-30. "For a state procedural

rule to be 'independent,' the state law basis for the decision must not be interwoven with federal

law." *LaCrosse*, 244 F.3d at 704 (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). "A

state law is so interwoven if 'the state has made application of the procedural bar depend on an

antecedent ruling on federal law [such as] the determination of whether federal constitutional

error has been committed.'" *Park*, 202 F.3d at 1152 (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75

(1985)).

To be deemed adequate, the state law ground for decision must be well-established and

consistently applied. *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999). Although a state

court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion

must entail "'the exercise of judgment according to standards that, at least over time, can become

known and understood within reasonable operating limits.'" *Wood v. Hall*, 130 F.3d 373, 377 (9th

Cir. 1997) (quoting *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996)).

California law requires, with certain exceptions, that appellate courts not consider claims of

error that could have been but were not raised in the trial court. *Peole v. Vera*, 15 Cal. 4th 269,

275 (1997). That rule has been deemed both independent of federal law, *People v. Williams*, 16

18

Cal. 4th 153, 208 (1997), and consistently applied, *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002). Here, the record establishes that defense counsel failed to tender a timely *Crawford* objection to the challenged evidence. Thus, the California Court of Appeal's determination that the claim had been procedurally defaulted bars federal review.

In any event, Petitioner's claim fails on the merits. First, there is no clearly established Supreme Court precedent finding a violation of the Confrontation Clause resulting from the admission of an expert's opinion based on hearsay statements. In *Williams*, a majority of the Supreme Court found that the laboratory results from a nontestifying technician which informed the expert witness were not testimonial in nature and therefore did not violate the Confrontation Clause. 132 S. Ct. at 2240, 2242-43. Also, a plurality concluded that the laboratory results were admitted for the nonhearsay purpose of "illuminating the expert's thought process" rather than establishing the truth of the matter asserted. *Id*. at 2240. Because the Supreme Court has provided no clear answer to the present question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law," *Wright v. Van Patten*, 552 U.S. at 126, and relief is barred.

Second, in light of the precedents discussed above, Petitioner failed to demonstrate that Officer Moe's testimony regarding the statements by Petitioner's brothers and Mendoza about their gang membership were testimonial under *Crawford*. The Confrontation Clause applies only to "witnesses against the accused, i.e., those who bear testimony." *Crawford*, 541 U.S. at 51. Here, a reasonable jurist could concluded that the oral statements were not testimonial in nature because they bore no resemblance to formalized statements such as affidavits, depositions, prior testimony, or confessions. *Williams*, 132 S. Ct. at 2242. Thus, Petitioner did not show, as he was required to do, that the California Court of Appeal's decision was objectively unreasonable under AEDPA. *See, e.g., Murray*, 746 F.3d at 466 ("Relief is warranted only if no reasonable jurists could disagree that the state court erred.") (citing *Pinholster*, 563 U.S. at 188); *see also Lopez v. Jacquez*, 2010 WL 2650695, at *5 (E.D. Cal. July 1, 2010) ("Here, the Court does not find that an objective application of *Crawford* would result in a finding that the gang expert's reliance on hearsay testimony to explain his opinion that Petitioner was a member of the West Fresno

19

Norteños, and that the West Fresno Norteños are a criminal street gang, to be in violation of Petitioner's Confrontation Clause rights.") (citing *Walker v. Clark*, 2010 WL 1643580, at *15 n.8 (C.D. Cal. Feb. 18, 2010) (listing district court cases finding that hearsay statements of gang members regarding their gang membership did not violate the Confrontation Clause as they were attested to by gang expert who was testifying about his expert opinion)).

Third, even if considered testimonial in nature, the statements were not offered for their truth, but instead only to inform the gang expert's opinion. For this reason as well, Officer Moe's expert opinion did not violate the Confrontation Clause. *Crawford*, 541 U.S. at 59 n.9; *see also Cason v. Hedgpeth*, 2009 WL 1096209, at *13–14 (C.D. Cal. Apr. 22, 2009) (hearsay evidence regarding witness's gang membership did not violate *Crawford* because it was admitted not for the truth of the matter asserted but to support detective's opinion that witness was a gang member).

Finally, the admission of Officer Moe's expert testimony did not have a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507 U.S. at 637. The challenged statements, if accepted for their truth, merely established that a couple of Petitioner's fellow gang members had admitted to their gang membership. This evidence could not have prejudiced Petitioner since based on other properly admitted evidence, such as pictures showing these individuals flashing gang signs and wearing gang colors, and engaging in criminal activity with other Sureno gang members, the fact of their gang membership was established by other properly admitted evidence.

Petitioner's remaining argument concerning Officer Moe's testimony of the contents of a sheriff's department report fares no better. Petitioner had the opportunity to confront and cross-examine the victims and the police officers in the juvenile case when the case was adjudicated in the juvenile courts. But he chose not to do so. By making this election, the California Court of Appeal concluded that Petitioner had waived his right to confrontation. Petitioner pointed to no Supreme Court decision squarely holding that the waiver of the right to confrontation in one proceeding cannot apply to a later proceeding involving use of testimony from the first proceeding. *See Wright*, 552 U.S. at 125-26. Indeed, existing Supreme Court precedent supposes

20

the California Court of Appeal's decision. *See Boykin v. Alabama*, 395 U.S. 238, 243 & n.5 (1969) (for valid guilty plea, due process requires voluntary and intelligent waiver of confrontation right). Moreover, it cannot be said that no reasonable jurist—not even one—could agree with the California Court of Appeal. Thus, Petitioner is barred from obtaining relief. 28 U.S.C. § 2254(d)(1).

Petitioner's alternative argument that counsel was ineffective for failing to object also fails. In general, to prevail on an ineffective assistance of counsel claim under the Sixth Amendment, a petitioner has the burden of showing (1) that his trial counsel's performance "fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The deficiency test is an objective one. The question is whether counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. "To show prejudice under *Strickland* resulting from the failure to file a motion, a defendant must show that (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him." *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

Where, as here, the state court has adjudicated the ineffectiveness claim on the merits, the state court's decision is entitled to double deference. *Pinholster*, 563 U.S. at 190. At the first level of deference, the federal court gives deference to the trial counsel's "wide latitude ... in making tactical decisions." *Strickland*, 466 U.S. at 689. At the second level of deference, a federal court must give deference to the state court under AEDPA. Under this level of deference, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

As the California Court of Appeal properly concluded, "any challenge would have been futile as the statements were not rendered inadmissible by the confrontation clause." (Ex. 1 at 13-

21

14.) *Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel). Moreover, as previously argued, Petitioner was not prejudiced by admission of the challenged evidence. *Wilson*, 185 F.3d at 990. Because Petitioner failed to demonstrate that no reasonable jurist could agree with the California Court of Appeal's ruling, he is barred from obtaining relief on his ineffectiveness claim. 28 U.S.C. § 2254(d)(1).

III. **GROUND FOUR: PETITIONER FAILED TO DEMONSTRATE THAT HE IS ENTITLED TO HABEAS RELIEF ON THE GROUND THAT THE TRIAL COURT ABUSED ITS DISCRETION ADMITTING EVIDENCE OF HIS PRIOR OFFENSES AND THOSE OF HIS FAMILY MEMBERS**

Petitioner challenges the admission of evidence of his prior offenses and those of his family members. He contends that this evidence had little or no probative value on the issues of a pattern of gang activity, and the predicate offenses for the gang enhancement could have been established by convictions of other Sureños. He also contends that this evidence was not relevant for some other purpose under California Evidence Code § 1101, such as to establish intent, motive or identity, or common design or plan, and was unduly prejudicial.

This claim was presented to the California Court of Appeal on direct review. (Lod. Doc. 1 at 20.) The court denied relief on the merits in a reasoned decision. (Ex. 1 at 8.) The California Supreme Court denied review. (Ex. 3.)

A. **Court of Appeal Ruling**

The California Court of Appeal provided the following explanation in denying Petitioner's claim:

> Moe testified about a number of offenses involving defendant and his family members, and testified about the involvement of many of defendant's family members in the Sureño gang. In March 2005 defendant and nine other youths dressed in blue, a color affiliated with the Sureños, attacked two Norteños. Defendant was adjudicated for battery with serious injury with a gang enhancement. After a traffic stop in November of 2006 Pedro Alvarado, a Sureño, was convicted of carrying a loaded firearm in public. Defendant was also in the car and was adjudicated as a ward of the court for carrying a concealed weapon in a vehicle. In May of 2008 Fidencio Mendoza, a Sureño, and defendant's older brother Ignacio were convicted of assault with a firearm. Defendant's two older brothers and two cousins were also active members of the Sureño gang.

"Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014 [30 Cal.Rptr.2d 818, 874 P.2d 248].) 'We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.] ...' (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [113 Cal.Rptr.2d 27, 33 P.3d 450].)" (*People v. Zepeda* (2008) 167 Cal.App.4th 25, 34–35.) "'Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt.' [Citation.]" (*People v. Tran* (2011) 51 Cal.4th 1040, 1048 (*Tran*).)

In asserting that the evidence of defendant's and his relatives' prior offenses had little or no probative value, defendant's argument disregards the fact that he was charged with not only a gang enhancement, but also with a substantive gang offense. Proof of the gang enhancement required, among other things, evidence that the gang's "members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f); see *id*. at subd. (e).) A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated predicate offenses during a statutorily defined time period. (§ 186.22, subd. (e); *see People v. Gardeley* (1996) 14 Cal.4th 605, 617.) The predicate offenses must have been committed on separate occasions, or by two or more persons. (§ 186.22, subd. (e); *People v. Loeun* (1997) 17 Cal.4th 1, 9–10.) The substantive gang offense required the prosecution to prove defendant's "(1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 56 (*Albillar*).)

Here, the evidence defendant complains of was relevant on the issues of the pattern of criminal conduct, defendant's active participation in the gang, and his knowledge of the gang's purpose. The evidence of defendant's prior offenses and those in which his family members were involved was relevant to establish the predicate offenses underlying the pattern of criminal conduct. To the extent defendant argues the offenses of Sureños other than defendant and his family members could have been utilized instead, the prosecution was not required to so sanitize its case. "That the prosecution might be able to develop evidence of predicate offenses committed by other gang members ... does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (*Tran, supra*, 51 Cal.4th at p. 1049.) Moreover, the evidence of defendant's prior offenses, including the battery with a gang enhancement, which could not serve as a predicate offense, was relevant to establish that defendant's involvement with the gang was not nominal or passive. Rather, defendant and at least one other gang member engaged in an assault against rival gang members. Finally, the evidence that defendant's family members had been involved in gang-related offenses was relevant to establish defendant had knowledge "that the gang's members engage in or have engaged in a pattern of criminal gang activity." (*Albillar, supra*, 51 Cal.4th at p. 56.) Thus, the evidence complained of was highly probative to establish a number of elements of the charged offenses.

23

1    Furthermore, we cannot find the evidence was unduly prejudicial. Where, as
2    here, "the prosecution is required to establish the defendant was an active participant
     in a criminal street gang and had knowledge of the gang's criminal activities, the jury
3    inevitably and necessarily will in any event receive evidence tending to show the
     defendant actively supported the street gang's criminal activities. That the defendant
4    [and his family members were] personally involved in some of those activities
     typically will not so increase the prejudicial nature of the evidence as to unfairly bias
5    the jury against the defendant." (*Tran, supra*, 51 Cal.4th at p. 1048.) In short, the use
     of evidence of a defendant's prior offenses and the offenses of his family members
6    did not "create 'an intolerable "risk to the fairness of the proceedings or the reliability
     of the outcome."' [Citation.]" (*Ibid*.) Accordingly, we find there was no abuse of
7    discretion in admitting evidence of defendant's prior gang-related offenses or those of
     his family members.

8    (Ex. 1 at 8-11.)

9       **B.    Analysis**

10      To begin with, Petitioner's claim is barred by the absence of clearly established precedent.

11   28 U.S.C. § 2254(d)(1); *Musladin*, 549 U.S. at 76-77. The Supreme Court has expressly left open

12   the question of whether the admission of propensity evidence violates due process. *See Estelle v.*

13   *McGuire*, 502 U.S. 62 (1991); *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001). In

14   *Estelle*, the Supreme Court refused to determine whether the introduction of prior crimes

15   evidence to show propensity to commit a crime would violate the Due Process Clause. 502 U.S.

16   at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law

17   would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

18   propensity to commit a charged crime."); *see also Alberni v. McDaniel*, 458 F.3d 860, 866 (9th

19   Cir. 2006) ("*Estelle* expressly left this issue an 'open question'").

20      Because the Supreme Court has specifically declined to address whether the introduction of

21   propensity evidence violates due process, Petitioner lacks the clearly established federal law

22   necessary to support his claim. *Mejia v. Garcia*, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (relying

23   on *Estelle* and *Alberni* and concluding that the introduction of propensity evidence under

24   California Evidence Code § 1108 does not provide a basis for federal habeas relief, even where

25   the propensity evidence relates to an uncharged crime); *Holley v. Yarborough*, 568 F.3d 1091,

26   1101 (9th Cir. 2009) (holding that the Supreme Court "has not yet made a clear ruling that

27   admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

28   sufficient to warrant issuance of the writ"). Likewise, absent clearly established federal law

                                          24

recognizing that the admission of irrelevant or prejudicial evidence violates due process, the California Court of Appeal could not have been unreasonable under AEDPA. *See Wright v. Van Patten*, 552 U.S. at 125-26 (holding that state court could not have unreasonably applied federal law if no clear Supreme Court precedent existed); *Holley*, 568 F.3d at 1101.

Moreover, Petitioner cannot prevail on this claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the state trial court erred in its application of California Evidence Code §§ 352 and 1108, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. Indeed, under Ninth Circuit case law predating Petitioner's conviction, admission of "other bad acts" evidence violates due process if there were no permissible inferences the jury could draw from the evidence and its admission rendered the trial fundamentally unfair. *See McKinney v. Rees*, 993 F.2d 1378, 1384–85 (9th Cir. 1993); *see also United States v. LeMay*, 260 F.3d 1018, 1024 (9th Cir. 2001) (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have"). Petitioner failed to demonstrate that the California Court of Appeal failed to identify any permissible inferences the jury could draw from the evidence, and that the admission of this evidence rendered the trial fundamentally unfair. *McKinney*, 993 F.2d at 1384-85. Indeed, the court provided numerous grounds supporting the admission of the challenged evidence. More importantly, Petitioner failed to demonstrate that no reasonable jurists could agree with the California Court of Appeal's decision that the trial court had not abused its discretion. *Murray*, 746 F.3d at 466 ("Relief is warranted only if no reasonable jurists could disagree that the state court erred.").

**CONCLUSION**

Petitioner's application for a petition for writ of habeas corpus should be denied.

Dated: March 29, 2017

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
TAMI M. KRENZIN
Deputy Attorney General


/S/ Brian R. Means
BRIAN R. MEANS
Deputy Attorney General
*Attorneys for Respondent*

SA2016302758
32794685.doc