# EX 1

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

FILED

FEB 18 2015

Court of Appeal, Third Appellate District
Deena C. Fawcett, Clerk
BY_____Deputy

| | |
|---|---|
| THE PEOPLE, | C060565 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF081476) |
| v. | |
| SALVADOR LOPEZ, | |
| Defendant and Appellant. | |

Defendant Salvador Lopez appeals his conviction for attempted murder with true findings that he intentionally and personally discharged a firearm causing great bodily injury and committed the offense for the benefit of a criminal street gang, and his conviction for active participation in a criminal street gang with a true finding he personally used a firearm. He contends (1) the trial court prejudicially erred in denying his motion to bifurcate the gang charge and enhancement from the other charges; (2) the trial court prejudicially erred in admitting evidence of his prior offenses and those of his family members; (3) the trial court prejudicially erred by failing to instruct the jury on the limited use of the prior crimes evidence or, in the alternative, that counsel was ineffective for failing to request such an instruction; (4) the trial court prejudicially erred by allowing

1

a gang expert to testify about out-of-court statements by defendant's brothers and another associate and the contents of a sheriff's report or, alternatively, that counsel was ineffective in failing to object to this testimony; and (5) that counsel was ineffective in failing to move to strike, or request a mistrial based on, the gang expert's comments, which allegedly cast aspersions on defense counsel, and allegedly improper comments made by the prosecutor in closing argument. Finding no prejudicial error, we affirm.

## FACTUAL BACKGROUND

Josiah Pacheco, a Norteño gang member, was walking down the street when a green sedan with three or four people suddenly stopped near him. Three people got out of the car and one said, "What's up?" to Pacheco. Pacheco responded, "[N]othing." Then one started shooting at Pacheco. Pacheco stated he was shot by "[s]ome Soreno [sic]." He also identified defendant as the shooter. Pacheco knew defendant from time they had spent together in juvenile hall. Pacheco reported defendant had "a problem" with Pacheco, because Pacheco had beaten up defendant's older brother. Pacheco also admitted he used to "gang bang" with the "Norte."

The day after the shooting, Pacheco was interviewed by police and again identified defendant as the shooter. He also positively identified defendant as the shooter in two separate photographic lineups. Pacheco stated he did not want to press charges because he did not want a reputation. Over the course of further interviews, Pacheco identified defendant as the shooter on two more occasions and stated that the people in the car were "southerners." He also revealed that defendant's first name was Salvador.

Law enforcement arranged for Pacheco to participate in a pretext phone call with defendant. Throughout the phone call, defendant denied shooting Pacheco. Defendant did, however, admit he was a gang member.

Prior to trial, Pacheco repeatedly told law enforcement he did not want to press charges against defendant and that at trial he would deny defendant had shot him. He also expressed disdain for "snitches" and reported a "snitch" would be killed by his own

gang. At trial, Pacheco recanted his earlier statements identifying defendant as the shooter. He testified defendant did not shoot him, and he did not know who had shot him. He acknowledged that if he did know who shot him, he would not confirm that law enforcement had the shooter; but in any event, defendant was not the shooter. Pacheco also denied having previously fought with defendant's brother.

Officer Aaron Moe testified as an expert in the Sureño criminal street gangs. He observed the area where the shooting occurred was known for gang-related activity. Moe testified gang members commit crimes to earn respect, and killing a rival gang member would significantly increase a gang member's status. The best way for gang members to earn respect and increase their status is to commit acts of violence. The more violent the crime, the more status is earned. Sureños and Norteños are rival gangs. Moe explained that many current gang members are "multi-generational or the brothers and sisters growing up, emulating what older family members are doing." Gang membership can be a "family tradition," and young children have demonstrated significant gang knowledge based on education from their older brothers, sisters, uncles, cousins, or parents.

Moe also testified that the Sureño gang's primary activities are crimes of violence. Defendant had repeatedly admitted to Moe he was a gang member and stated he had been one since sixth grade. Defendant also had a gang-related tattoo, and multiple photographs showed him demonstrating gang hand signs. In December 2007 defendant's brother Ignacio, his cousin Diego, and another Sureño gang member, Fidencio Mendoza, assaulted a rival Norteño gang member by shooting him. As a result, Ignacio and Mendoza were convicted of assault with a firearm. In November 2006 officers conducted a traffic stop on a vehicle containing defendant and other Sureño gang members. Pedro Alvarado was a passenger, and officers found him carrying a loaded firearm. As a result, Alvarado was convicted of carrying a loaded firearm in public. Defendant was adjudicated a ward of the court for carrying a concealed weapon in a vehicle. Defendant was also involved in an incident in which two Norteños were assaulted and property

3

taken from them. Defendant assaulted one of the victims with a board. The people convicted of this offense were members of two local Sureño gangs.

Moe concluded that on March 12, 2008, defendant was an active participant in the Sureño criminal street gang. Based on the fact that the victim was a documented Norteño gang member and the assault was committed by a Sureño gang member with a handgun, Moe opined that a hypothetical offense resembling the facts of this case would have been committed for the benefit of, in association with, or at the direction of the Sureño criminal street gang.

Moe also offered an explanation for Pacheco's reticence to cooperate with law enforcement as the trial approached. Gang members had told Moe that when a gang member like Pacheco cooperates with law enforcement, he loses respect within the gang structure. Accordingly, the majority of victims who are gang members do not cooperate with the prosecution.

Defendant denied shooting Pacheco. He claimed he was at home babysitting his younger brother. He admitted telling Moe that he is a Sureño, but he claimed that to him that simply meant he was from the south, Mexico. He denied ever telling Moe he was in a gang. He admitted associating with known gang members and making gang signs in photographs, but he claimed that was just to "fit in." Defendant admitted his brothers, Ignacio and Juan, were Sureño gang members but claimed they had dropped out. He admitted he had a conviction for battery with serious bodily injury and a gang enhancement. He stated he had stabbed a rival gang member "to be cool." He also got "13" tattoos when he was in juvenile hall because he thought it was "cool."[1] Defendant acknowledged that when he was younger, he wanted to be in the gang, but ultimately that

---

[1] The number 13 is important to Sureños. It represents the 13th letter of the alphabet, "M," which stands for "Mexican Mafia." Sureños affiliate themselves with the Mexican Mafia.

had gotten him into trouble. Specifically, he had admitted being in possession of a gun after being told he could not win at trial and was sent to a youth guidance center. Since his release from the guidance center he had tried, albeit unsuccessfully, to stay out of trouble. He claimed the "trouble" was not gang related. He acknowledged he had seen Pacheco somewhere but did not recall that Pacheco had ever beaten up his brother. Defendant claimed that in the phone call with Pacheco, he had admitted being a gang member because he was "playing along" with the caller.

## PROCEDURAL HISTORY

Defendant was charged with attempted premeditated murder (Pen. Code, §§ 664/187)[2] and participation in a criminal street gang (§ 186.22, subd. (a)). As to the attempted murder charge, it was further alleged defendant intentionally and personally discharged a firearm, causing great bodily injury (§ 12022.53, subd. (d)), and that he committed the offense for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). As to the participation in a street gang charge, it was further alleged defendant personally used a firearm. (§ 12022.5, subd. (a)(1).)

Defendant's pretrial motions included a motion to bifurcate the gang charge and gang enhancement from the trial of the underlying charges. He argued the case was appropriate for bifurcation as "[t]he prejudicial effect of the gang evidence, most of which does not involve defendant directly, is to bolster the prosecution's case by giving the jury the impression that the defendant is associated with others who commit crimes. The gravity and seriousness of the gang evidence creates 'a substantial danger of prejudice requiring that the charges be separately tried.['] [Citation.]" Defendant also argued that because the community was "jittery" about gangs, in particular given local media coverage of gang shootings, it would be difficult for jurors to remove their feelings

---

[2] Undesignated statutory references are to the Penal Code.

from deliberations. The People opposed the motion as defendant was charged with not only a gang enhancement but also with the substantive offense of active participation in a criminal street gang, which would require essentially the same evidence as the enhancement. Accordingly, the People contended there was no way to separate the cases and have the jury understand the case. Further, the gang evidence was relevant to the motive underlying the attempted murder. Specifically, the People argued the attempted murder was the result of personal animosity between defendant and the victim and also because they were rival gang members. The trial court ruled defendant had not established that the probative value of the gang evidence was substantially outweighed by the danger of undue prejudice. Accordingly, the court denied the motion to bifurcate.

Following a jury trial, the jury found defendant guilty on both counts and found all the enhancement allegations true. After finding the information had not properly alleged premeditated attempted murder, the trial court sentenced defendant to the upper term of nine years for attempted murder plus 25 years to life for the firearm enhancement, and the upper term of three years for active participation in a street gang plus 10 years for the firearm enhancement. The sentence on the street gang conviction was stayed under section 654. The street gang enhancement allegation was struck in the interest of justice. Various fines and fees were imposed.

## DISCUSSION

### I

### Motion to Bifurcate Was Properly Denied

Defendant contends the trial court abused its discretion in denying his motion to bifurcate the gang charge and enhancement from the other charges as the relevance of the gang evidence was minimal and the potential prejudice was great. We disagree.[3]

---

[3] Defendant cites section 954, which permits the trial court, in its discretion, to sever charges. However, his argument does not address the factors to be considered in

Bifurcation of a gang enhancement may be warranted where the gang evidence is "so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049 (*Hernandez*).) But, "[t]o the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary." (*Id.* at pp. 1049-1050.) "Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself . . . a court may still deny bifurcation." (*Id.* at p. 1050.)

The denial of a motion to bifurcate the trial of a gang enhancement is reviewed for an abuse of discretion. (*Hernandez*, *supra*, 33 Cal.4th at p. 1048.) The "trial court's discretion to deny bifurcation of a charged gang enhancement is . . . broader than its discretion to admit gang evidence when the gang enhancement is not charged." (*Id.* at p. 1050.) There is no abuse of discretion if the gang evidence is relevant to the charged offense or is not so minimally probative and so inflammatory in comparison that "it threatened to sway the jury to convict regardless of defendant['s] actual guilt." (*Id.* at p. 1051.) To show an abuse of discretion, defendants have the burden " 'to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' [Citation.]" (*Ibid.*)

---

determining whether a severance motion should be granted: " '(1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.' " (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220-1221.) Rather, defendant's argument rests solely on his assertion that the gang evidence had an unduly prejudicial effect and was minimally probative. Having made no claims as to factors 3 and 4, we need not address them.

Here, defendant was charged with not only a gang enhancement, but with a substantive gang offense. Thus, the gang evidence was directly relevant and admissible on the issue of defendant's guilt on a substantive charge. As such, any potential prejudice was dispelled and bifurcation was not necessary. (*Hernandez, supra,* 33 Cal.4th at pp. 1049-1050.)

Moreover, even without the substantive gang offense, the gang evidence was inextricably intertwined with the attempted murder charge. The motive for the offense here was personal animosity between Pacheco and defendant, as well as the more general animosity between them stemming from their rival gang memberships. Pacheco initially identified his shooter as "[s]ome Soreno [*sic*]." He knew defendant because of their respective involvement in gangs and knew defendant was a Sureño. Pacheco gave numerous statements to police identifying defendant as the shooter but by trial was recanting his earlier statements. Gang evidence was relevant to explain the inconsistencies between Pacheco's trial testimony and pretrial statements. Thus, the gang evidence was relevant and admissible on the attempted murder charge to help the jury understand defendant's motive and identity, and to evaluate the credibility of witnesses. (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1167-1168; see also *Hernandez, supra,* 33 Cal.4th at pp. 1049-1051.) Under the facts of this case, we conclude the court acted within its discretion in refusing to bifurcate trial of the gang enhancement from trial of the charged offenses. (*Hernandez, supra,* 33 Cal.4th at pp. 1050–1051.)

## II

### Prior Offenses Were Properly Admitted

Defendant next contends the trial court abused its discretion in admitting evidence of his prior offenses and those of his family members. Defendant argues the evidence of his prior offenses, as well as those of his family members, had little or no probative value on the issues of a pattern of gang activity, and the predicate offenses for the gang enhancement could have been established by convictions of other Sureños. He also

8

contends the evidence was not relevant for some other purpose under Evidence Code section 1101, such as to establish intent, motive or identity, or common design or plan. Moreover, defendant contends the evidence was highly prejudicial character evidence. We disagree.[4]

Moe testified about a number of offenses involving defendant and his family members, and testified about the involvement of many of defendant's family members in the Sureño gang. In March 2005 defendant and nine other youths dressed in blue, a color affiliated with the Sureños, attacked two Norteños. Defendant was adjudicated for battery with serious injury with a gang enhancement. After a traffic stop in November of 2006 Pedro Alvarado, a Sureño, was convicted of carrying a loaded firearm in public. Defendant was also in the car and was adjudicated as a ward of the court for carrying a concealed weapon in a vehicle. In May of 2008 Fidencio Mendoza, a Sureño, and defendant's older brother Ignacio were convicted of assault with a firearm. Defendant's two older brothers and two cousins were also active members of the Sureño gang.

"Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1014 [30 Cal.Rptr.2d 818, 874 P.2d 248].) 'We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.] . . .' (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121 [113 Cal.Rptr.2d 27, 33 P.3d 450].)" (*People v. Zepeda* (2008) 167 Cal.App.4th 25, 34-35.) " 'Prejudice for purposes of Evidence Code section 352 means evidence that tends

---

[4] We agree with the parties that trial counsel's objection to the admission of the gang evidence adequately preserved this issue for review on appeal. Accordingly, we address the issue on its merits, not as a claim of ineffective assistance of counsel.

to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt.' [Citation.]" (*People v. Tran* (2011) 51 Cal.4th 1040, 1048 (*Tran*).)

In asserting that the evidence of defendant's and his relatives' prior offenses had little or no probative value, defendant's argument disregards the fact that he was charged with not only a gang enhancement, but also with a substantive gang offense. Proof of the gang enhancement required, among other things, evidence that the gang's "members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f); see *id.* at subd. (e).) A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated predicate offenses during a statutorily defined time period. (§ 186.22, subd. (e); see *People v. Gardeley* (1996) 14 Cal.4th 605, 617.) The predicate offenses must have been committed on separate occasions, or by two or more persons. (§ 186.22, subd. (e); *People v. Loeun* (1997) 17 Cal.4th 1, 9-10.) The substantive gang offense required the prosecution to prove defendant's "(1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 56 (*Albillar*).)

Here, the evidence defendant complains of was relevant on the issues of the pattern of criminal conduct, defendant's active participation in the gang, and his knowledge of the gang's purpose. The evidence of defendant's prior offenses and those in which his family members were involved was relevant to establish the predicate offenses underlying the pattern of criminal conduct. To the extent defendant argues the offenses of Sureños other than defendant and his family members could have been

utilized instead, the prosecution was not required to so sanitize its case. "That the prosecution might be able to develop evidence of predicate offenses committed by other gang members . . . does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (*Tran, supra*, 51 Cal.4th at p. 1049.) Moreover, the evidence of defendant's prior offenses, including the battery with a gang enhancement, which could not serve as a predicate offense, was relevant to establish that defendant's involvement with the gang was not nominal or passive. Rather, defendant and at least one other gang member engaged in an assault against rival gang members. Finally, the evidence that defendant's family members had been involved in gang-related offenses was relevant to establish defendant had knowledge "that the gang's members engage in or have engaged in a pattern of criminal gang activity." (*Albillar, supra*, 51 Cal.4th at p. 56.) Thus, the evidence complained of was highly probative to establish a number of elements of the charged offenses.

Furthermore, we cannot find the evidence was unduly prejudicial. Where, as here, "the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities. That the defendant [and his family members were] personally involved in some of those activities typically will not so increase the prejudicial nature of the evidence as to unfairly bias the jury against the defendant." (*Tran, supra*, 51 Cal.4th at p. 1048.) In short, the use of evidence of a defendant's prior offenses and the offenses of his family members did not "create 'an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' [Citation.]" (*Ibid.*) Accordingly, we find there was no abuse of discretion in admitting evidence of defendant's prior gang-related offenses or those of his family members.

## III

### No Error in Not Giving Limiting Jury Instruction

Defendant contends the trial court erred in failing to instruct the jury on the limited use of his or his family members' prior crimes evidence; specifically, that the jury could not use the evidence "to draw any inference of familial or personal disposition to commit the charged crimes." If we find the matter forfeited, defendant argues in the alternative that counsel's failure to request such an instruction was ineffective assistance of counsel.

Counsel did not request a limiting instruction on the evidence of defendant's and his family members' prior offenses. The trial court has no sua sponte duty to give such an instruction. (*Hernandez, supra*, 33 Cal.4th at p. 1051.) Contrary to defendant's assertion, this is not an extraordinary case in which the evidence was both " 'highly prejudicial and minimally relevant to any legitimate purpose.' [Citation.]" (*Id.* at pp. 1051-1052.) As above, the evidence was relevant on elements of both the gang enhancement and the substantive gang offense. (*Id.* at p. 1052.) Accordingly, the court had no sua sponte duty to provide limiting instructions to the jury on the use of this evidence. We therefore address defendant's alternate argument that the failure to request a limiting instruction was ineffective assistance of counsel.

" 'To establish ineffective assistance, defendant bears the burden of showing, first, that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. Second, a defendant must establish that, absent counsel's error, it is reasonably probable that the verdict would have been more favorable to him.' [Citation.] 'If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation.' [Citation.] On this record, we cannot say that counsel were deficient for not requesting a limiting instruction. 'A reasonable attorney may have tactically concluded that the risk of a limiting instruction . . . outweighed the

12

questionable benefits such instruction would provide.' [Citations.]" (*Hernandez, supra,* 33 Cal.4th at pp. 1052-1053.)

The instruction explains that evidence of other crimes may not be considered to show a defendant's disposition or propensity to commit crimes. It also explains the proper purposes for which such evidence may be considered, including intent, motive, identity, and that the crimes were committed for the benefit of a street gang or in association with a street gang with the intent to promote or assist in criminal conduct by gang members. (CALJIC No. 2.50.) That is, here the prior offense evidence was relevant to, and could be considered on, a number of elements of the charged offense and enhancement. As above, the evidence was relevant on the issues of a pattern of criminal conduct, defendant's active participation in a gang, and his knowledge of the gang's purpose. Under the circumstances, defense counsel might reasonably have concluded it was best if the court did not explain all the ways in which the evidence could be used against defendant. (*Hernandez, supra,* 33 Cal.4th at pp. 1052-1053.) Given the tactical risks of requesting a limiting instruction, we find no ineffective assistance of counsel.

## IV

## Defendant's Claimed Confrontation Clause Violations

Defendant contends "the trial court prejudicially erred and violated [his] confrontation rights by admitting evidence of statements made out of court by persons not presented for confrontation." Specifically, he complains about the admission of statements by defendant's brothers and Mendoza admitting that they were gang members and identifying their particular subsets. He also contends Moe's testimony recounting the contents of a sheriff's department report describing defendant's participation in the battery with serious bodily injury was improperly admitted. Alternatively, to the extent that counsel failed to object to the admission of these statements, defendant asserts he was denied effective assistance of counsel. We will conclude that defendant failed to preserve the right to challenge the statements by a timely and specific objection based on

the confrontation clause. Moreover, any challenge would have been futile as the statements were not rendered inadmissible by the confrontation clause; thus, his counsel's failure to object did not constitute ineffective assistance.

## A.    The Confrontation Clause Generally

The confrontation clause of the Sixth Amendment to the United States Constitution provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " (*Crawford v. Washington* (2004) 541 U.S. 36, 42 [158 L.Ed.2d 177] (*Crawford*).) The confrontation clause has traditionally barred "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Id.* at pp. 53-54.) "Under *Crawford*, the crucial determination about whether the admission of an out-of-court statement violates the confrontation clause is whether the out-of-court statement is testimonial or nontestimonial." (*People v. Geier* (2007) 41 Cal.4th 555, 597, overruled on other grounds in *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 [174 L.Ed.2d 314] (*Melendez-Diaz*).)

*Crawford* did not specify what constitutes a testimonial statement for purposes of the confrontation clause but offered examples of the "[v]arious formulations of this core class of 'testimonial' statements," i.e., " '*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' [citation]; 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation]; [and] 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' [citation]." (*Crawford, supra,* 541 U.S. at pp. 51-52.)

The high court subsequently explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822 [165 L.Ed.2d 224]; see also *Michigan v. Bryant* (2011) 562 U.S. 344 [131 S.Ct. 1143, 1157, 179 L.Ed.2d 93].)

The United States Supreme Court continued to grapple with what constitutes testimonial statements in *Melendez-Diaz, supra,* 557 U.S. 305; *Bullcoming v. New Mexico* (2011) 564 U.S. ___ [131 S.Ct. 2705, 180 L.Ed.2d 610]; and *Williams v. Illinois* (2012) 567 U.S. ___ [132 S.Ct. 2221, 183 L.Ed.2d 89], but reached little further consensus. In short, the United States Supreme Court has not provided an exhaustive or comprehensive list of what constitutes a testimonial statement.

The California Supreme Court has carefully examined the various approaches adopted by the United States Supreme Court in those cases following *Crawford* in a trilogy of its own cases decided in 2012: *People v. Lopez* (2012) 55 Cal.4th 569, *People v. Dungo* (2012) 55 Cal.4th 608, and *People v. Rutterschmidt* (2012) 55 Cal.4th 650. The California Supreme Court recognized that the United States Supreme Court had not agreed upon a definition of "testimonial" for confrontation clause purposes. (*Lopez, supra,* 55 Cal.4th at p. 581.) Based on its reading of the United States Supreme Court cases, the *Lopez* court identified two "critical components" required to find a statement testimonial: (1) the statement must have been made with some degree of formality or solemnity (*id.* at pp. 581-582), and (2) "all nine high court justices agree that an out-of-court statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution, but they do not agree on what the statement's primary purpose must be" (*id.* at p. 582).

15

## B.    Trial Testimony and Defendant's Objections

Prior to trial, defendant filed a "Trial Brief re: Admissibility of Gang Evidence." Within that brief, under the heading "Incompetent Hearsay Evidence Must be Excluded at Trial," defendant argued "[s]everal of the proffered incidents rely heavily upon statements made by the defendant and others. Because most of those statements are self-serving statements, containing both exculpatory and inculpatory information, the statements in their entirety should be excluded at trial.

"Similarly, California courts, in the context of gang expert testimony and evidence, have excluded gang evidence that is unreliable. For example, courts have held that a gang expert can not [*sic*] offer non-specific hearsay regarding an incident unless he has personal knowledge of the incident."

Under the heading "The Gang Expert Cannot Render an Opinion Based on Incompetent Hearsay," defendant averred, "It is anticipated that the expert in this case may attempt to rely on hearsay evidence that is irrelevant, unreliable and prejudicial. Defendant objects first on hearsay grounds." Defendant did not mention *Crawford, supra,* 541 U.S. 36 or the confrontation clause in his trial brief or in argument on the issues.

Prior to Moe's testifying as an expert witness, the trial court conducted an Evidence Code section 402 hearing "to get to the hearsay aspects and other objections that [defense counsel raised] in his trial brief." Defense counsel objected to any testimony by Moe related to gang activity, claiming there was no evidence the shooting was gang related. The trial court overruled the objection. At no time during that hearing was there any discussion of *Crawford* or the confrontation clause.

As relevant to these claims on appeal, Moe testified his general duties in the gang suppression unit are to "conduct practical enforcement, contact gang members in the local area, contact and document their activities"; he reviewed letters by gang members and associates, received outside agency reports regarding arrests or involving gang

16

members, participated in gang-related probation searches and gang sweeps, reviewed field contact reports detailing contacts with individuals in the community, including information about tattoos, clothing and associates, and he had had contact with over 1,000 gang members. As a gang officer, he spoke with gang members and associates, sometimes daily. For the most part, they were willing to speak with him on the street and were open about their gang memberships. They were less open and cooperative about admitting their gang memberships when they were being interviewed or interrogated. Moe would speak with them about their gang affiliations, their associates, how long they had been in their gangs, their methods of joining the gangs, and what they did to earn their "stripes and respect." He would also ask about current trends, symbols, and rivalries. The court qualified Moe as an expert in the Sureño criminal street gangs.

Moe described a number of photographs depicting defendant, his family members, and other documented Sureño gang members wearing gang-related clothing, adorned with gang-related tattoos, and demonstrating gang hand signs. In one, defendant was demonstrating a hand sign for West Myrtle, a subset of the Sureños. Also in the picture were two documented Sureño gang members and one admitted gang member. Another person in the photograph was throwing a gang-related "13" hand sign and had gang tattoos. Two of the others pictured had gang-related charges pending against them.

In another photograph, defendant was demonstrating the "13" hand sign. Next to him was a documented Sureño gang member, demonstrating the WM (for West Myrtle) hand sign and wearing gang-related clothing. Moe also described a photograph of defendant and Pedro Alvarado that officers found during a traffic stop. During the traffic stop, Alvarado admitted to being a gang member and had gang-related tattoos. Also depicted in the photograph were Jose Mangana and Eddie Lopez. Mangana and Alvarado were throwing gang signs together that indicated they were Sureños and part of the West Myrtle set. Another picture depicted defendant, his older brother Juan, and two others. When asked if Juan had "admitted to being a gang member," Moe answered, "Yes."

Specifically, Juan was part of the West Myrtle set. Another photograph depicted defendant and Juan wearing gang-related clothing and demonstrating gang symbols. Defendant's brother Ignacio was in a photograph with Michael Flores, with the words "West Myrtle" and the number "13" on the photograph. In another picture of defendant, Ignacio, and Flores, defendant and his brother were throwing the WM symbol and the picture had a 13 on it.

Moe testified about an assault with a firearm in which both Fidencio Mendoza and defendant's brother Ignacio were involved in shooting Isaac Gomez. Each was convicted of assault with a firearm and commission of an act for the benefit of a street gang. Moe had personally spoken with Ignacio several times, and Ignacio had admitted his gang membership, claiming West Myrtle Sureños. Moe had also spoken with Mendoza, who admitted his gang membership, claiming YC Trece. It would be common for them to commit crimes together because the two groups get along and associate with each other.

Moe also testified about a case in which defendant was adjudicated for battery with serious injury and a gang enhancement. Defendant entered admissions to the offenses and as a condition of probation was ordered to register as an illegal street gang member. Moe also testified as to the contents of a sheriff's report describing the facts leading to that adjudication. Two documented Norteño members, Benny Castro and Ricky Diaz, were walking when they saw approximately 10 subjects wearing blue. As Norteños, they assumed the subjects wearing blue were Sureños. They tried to flee, but the group caught them. One of the group asked if Castro and Diaz were gang members. They answered no. The group then assaulted Castro and Diaz, hitting them several times with hands, feet, and boards. At the end of the assault, Castro's shoes and Diaz's cell phone and jacket were stolen. Defendant's involvement in the assault was "that he was identified by one of the co-defendants, Anthony Mendoza, and Benny Castro, as being involved. Benny Castro identified Salvador as the subject that hit him with the board." Defense counsel objected on hearsay grounds to the testimony detailing defendant's

involvement in the assault. The trial court overruled the objection. There was no objection on the basis of *Crawford* or the confrontation clause. All of the juveniles convicted in that case were members of either the YC Trece or West Myrtle Sureños.

Moe testified further that defendant had admitted to being a gang member as early as 2006. Defendant stated he had been a member since sixth grade. His two older brothers and two cousins were also active members in the Sureño criminal street gang.

Moe offered an opinion that defendant was involved in criminal street gang activity and was an active participant in the Sureño street gang. He based this opinion on the fact that defendant was continually in contact with known Sureño gang members, had been actively participating with them in the offenses he had been arrested for, had knowledge of and the ability to demonstrate gang-related hand signs, had gang-related tattoos, and the fact that he had family members involved in the gang.

## C. Defendant's Confrontation Clause Claims Were Forfeited by His Failure to Make a Specific and Timely Objection

"The right to confrontation may, of course, be [forfeited], including by failure to object to the offending evidence . . . ." (*Melendez-Diaz, supra*, 557 U.S. at p. 314, fn. 3; see also Evid. Code, § 353.) In California, "[t]he general rule is that 'when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal' (*People v. Jennings* (1988) 46 Cal.3d 963, 975, fn. 3 [251 Cal.Rptr. 278, 760 P.2d 475]), although a sufficiently definite and express ruling on a motion in limine may also serve to preserve a claim (*People v. Ramos, supra*, 15 Cal.4th at p. 1171)." (*People v. Brown* (2003) 31 Cal.4th 518, 547.)

"[A] motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable

body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context. When such a motion is made and denied, the issue is preserved for appeal. On the other hand, if a motion *in limine* does not satisfy each of these requirements, a proper objection satisfying Evidence Code section 353 must be made to preserve the evidentiary issue for appeal." *(People v. Morris* (1991) 53 Cal.3d 152, 190, overruled on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.) A blanket, pretrial objection to all "hearsay" evidence proffered under the "guise" of expert testimony is not sufficient to preserve a confrontation claim because the admission of out-of-court statements does not necessarily implicate the confrontation clause; to implicate the confrontation clause, the statements must be both hearsay and testimonial. *(Crawford, supra,* 541 U.S. at pp. 51, 59-60 & fn. 9; see *People v. Loy* (2011) 52 Cal.4th 46, 66 [" 'Not all erroneous admissions of hearsay violate the confrontation clause. . . . Only the admission of *testimonial* hearsay statements violates the confrontation clause . . . .' [Citations.]"].) Further, a global hearsay or Evidence Code section 352 objection to the admission of evidence on the basis of an expert's opinion does not allow a particular out-of-court statement to be considered in its appropriate context with regard to whether it is in fact testimonial.

"Under California law, error in admitting evidence may not be the basis for reversing a judgment or setting aside a verdict unless 'an objection to or a motion to exclude or to strike the evidence . . . was timely made and *so stated as to make clear the specific ground of the objection or motion . . . .'* (Evid. Code, § 353, subd. (a), italics added [by *Zamudio*].) 'In accordance with this statute, [the California Supreme Court has] consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable. [Citations.]' *(People v. Seijas* (2005) 36 Cal.4th 291, 302 [30 Cal.Rptr.3d 493, 114 P.3d 742].) Although no 'particular form of objection' is required, the objection must 'fairly inform the trial court, as well as the party offering the evidence, of the specific reason or

reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling.' [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 354; see Assem. Com. on Judiciary com., 29B pt. 1A West's Ann. Evid. Code (2011 ed.) foll. § 353, p. 599.) "A general objection to the admission or exclusion of evidence, or one based on a different ground from that advanced at trial, does not preserve the claim for appeal." (*People v. Marks* (2003) 31 Cal.4th 197, 228.)  In general, where a defendant does not expressly object on confrontation grounds at trial, the constitutional claim is not preserved for appeal. (See *Melendez-Diaz, supra*, 557 U.S. at p. 314, fn. 3; *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14 (*Catlin*); Evid. Code, § 353.)

Thus, to preserve a claim of *Crawford* error, defendant was required to make timely and specific objection to identified evidence, rather than a sweeping motion to exclude a nebulous body of out-of-court statements relied upon by an expert in reaching an opinion.  Where such an objection is made, the prosecution has the opportunity to show that a particular out-of-court statement is not testimonial and the trial court can then determine, in the first instance and in the appropriate context, whether the challenged statement is testimonial.

Here, defendant did not make any objection to any of Moe's testimony on the basis of *Crawford* or the confrontation clause.  Rather, during trial, he made only a general hearsay objection to Moe's testimony relaying the contents of the sheriff's report. Because of defendant's failure to raise a timely and specific *Crawford* objection in the trial court, his claims on appeal regarding *Crawford* and the confrontation clause are forfeited.

**D.      In Any Event, Defendant's Confrontation Rights Were Not Violated**

To prevail on a claim of ineffective assistance of counsel, defendant must establish both that counsel's performance was deficient and the errors were prejudicial.  If he fails to establish one prong, we need not address the other. (*Strickland v. Washington* (1984)

466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Defendant cannot meet that burden here. Defendant claims that counsel was ineffective for failing to object to the admission of Moe's testimony that Juan, Ignacio, and Mendoza had admitted to him they were gang members. As to these claims, we find the statements were not testimonial and therefore *Crawford* does not apply. Defendant also contends counsel was ineffective for failing to object on confrontation clause grounds to Moe's testimony setting forth the contents of the sheriff's report detailing the facts underlying defendant's juvenile adjudication for battery with great bodily injury and a gang enhancement. However, as to this testimony, defendant had previously waived his confrontation rights as to those charges when he entered an admission to the offenses. An objection based on the confrontation clause would have been without merit.

### *Admissions to gang membership were not testimonial.*

Moe testified he spoke with gang members daily and they were willing to speak with him openly about their gang memberships. He also testified Juan, Ignacio, and Mendoza had admitted their gang memberships. There was, however, no indication in the testimony about the context of those conversations or the circumstances under which they took place. There is nothing in the record that indicates the conversations occurred as part of a police interrogation, had any degree of formality or solemnity, or were procured with the primary purpose of creating an out-of-court substitute for trial testimony. (*People v. Valadez* (2013) 220 Cal.App.4th 16, 36 (*Valadez*).) In fact, Moe's testimony that gang members disclaim their gang memberships in the context of interrogations and police interviews suggests the contrary.

Not every conversation between a police officer and a gang member is necessarily conducted with the purpose of creating a testimonial substitute for use in a future prosecution. Police officers may have conversations with gang members for multiple reasons. "Day in and day out such information would be useful to the police as part of

22

their general community policing responsibilities quite separate from any use in some unspecified criminal prosecution." (*Valadez, supra*, 220 Cal.App.4th at p. 36.) The information could also be gathered to deter future criminal activity or maintain institutional security or safety of those already incarcerated. Given Moe's testimony that he had many casual, consensual conversations with gang members in which they openly admitted their gang memberships, we cannot conclude Moe's multiple conversations with Ignacio, Juan, and Mendoza were testimonial. Because the statements of Ignacio, Juan, and Mendoza admitting their gang memberships were not testimonial, counsel was not ineffective in failing to raise a confrontation clause objection.

### Confrontation rights as to juvenile adjudication waived.

Defendant was adjudicated for battery with great bodily injury and a gang enhancement in 2005 based on his admission to both offenses. In juvenile proceedings, the court must explicitly advise the minor of his right to confront and cross-examine witnesses, and in making an admission to the charges, the minor must waive those rights. The court is required to make an explicit finding that the minor waived his right to confront and cross-examine witnesses. (Cal. Rules of Court, rule 5.778.)

*Crawford* is not violated if the defendant had a prior opportunity to cross-examine the declarant. (*People v. Angulo* (2005) 129 Cal.App.4th 1349, 1368.) Here, defendant had the opportunity to confront and cross-examine the victims and the officers in the juvenile case when the matters were being adjudicated in the juvenile courts in 2005 by going to trial on the charges. By electing not to do so, he necessarily waived his right of confrontation. (*Ibid.*) The right to confrontation is not Lazarus-like, resurrected after it is waived when the defendant is charged with additional offenses.

Here, defendant's confrontation rights were satisfied in the juvenile proceeding. He waived them. He cannot now reclaim them. Accordingly, counsel was not ineffective for failing to raise a *Crawford* objection to the testimony regarding the sheriff's report.

## No Ineffective Assistance of Counsel or Prosecutorial Misconduct

Defendant's final contention is that trial counsel was ineffective when he "failed to move to strike the gang expert's comment that the Mexican Mafia controls gang members on the street by using attorney-client privilege or for a mistrial" based on this statement. He also contends counsel was ineffective for failing to object to improper comments made by the prosecutor in summation. Defendant contends Moe's statement "cast aspersions upon defense attorneys as a class, suggesting that they are generally so foolish or so corrupt that they are easily manipulated by the Mexican Mafia." He goes on to contend such a comment "could only inflame the jury against both counsel and client and arouse the suspicion that [defendant's] defense was likewise manipulated by the Mexican Mafia." As to the claimed prosecutorial misconduct, defendant contends the prosecutor improperly "urged the jury to use the prior offense evidence to infer a disposition to commit crimes on the part of [defendant] and his family," and the prosecutor failed to prevent Moe "from blurting out irrelevant information about [defendant's] family members' involvement in criminality [citation] and the comment that the Mexican Mafia controls gang members on the street, among other ways, by using attorney-client privilege."

As detailed above, to establish ineffective assistance of counsel, defendant must show both deficient performance by counsel and prejudice. Where, as here, the record provides no information as to counsel's reasons for failing to act in a particular manner, we must reject the claim on appeal unless " 'there simply can be no satisfactory explanation.' [Citation.]" (*Hernandez, supra*, 33 Cal.4th at p. 1053.) Defendant has not met this burden.

### Expert's Statement

When describing the history of the Sureño street gang, Moe relayed the connection between the Sureños and the Mexican Mafia. He indicated it was common for Mexican

Mafia prison gang members to control what Sureños do on the streets by "using the miniature style writing. In my training and experience, I've come across miniature writings, the kites, which are hit lists. They have marching orders to go out and tell an individual to establish a regiment in a certain area. They communicate through attorney-client privilege. They communicate through ghost writing, which is different ways through -- it's [invisible] writing.

"They're able to bring it out, through a heat source. They communicate by gang members themselves getting out of prison on -- given orders in prison. Once they're paroled, they take the orders to the street and put them in order." Moe then went on to describe the relationship between the Sureños and their rivals, and their territories.

We simply do not agree with defendant that these comments cast aspersions on defense counsel's character and integrity as a class or by implication on defendant's specific trial counsel. (See *People v. Maciel* (2013) 57 Cal.4th 482, 525.) But even if they could be so interpreted, counsel was not ineffective for failing to object and moving to have the comments stricken. "[T]he decision whether to object, move to strike, or seek admonition regarding such testimony is highly tactical, and depends upon counsel's evaluation of the gravity of the problem and whether objection or other responses would serve only to highlight the undesirable testimony." (*Catlin, supra,* 26 Cal.4th at p. 165.) Viewing the statement in its context, it was a passing and obscure comment, not likely to be understood by the jury as impugning defense counsel as a class or in particular. Objecting to the statement and seeking to have it stricken would have drawn attention to the statement it did not otherwise warrant. It was a reasonable tactical decision to not draw undue attention to the statement by moving either to strike it or for a mistrial.

**Prosecutorial Conduct**

In closing argument, relative to the gang enhancement allegation, the prosecutor sought to explain to the jury what "a pattern of criminal activity" meant. He discussed the four possible predicate offenses. He then went on to discuss the Sureño gang's

primary activity as committing violent crimes. In that context he argued, "Let's look to those predicate acts and offenses. All offenses committed by [Sureño] gang members here in Sutter County. The dates, the shooting of Isaac Gomez, December 31, '07. Two and half [*sic*] months later is when [defendant] tried to shoot Mr. Pacheco. Big brother, little brother. And I'm going to use an example that I think is appropriate.

"I have a 10-year[-]old son. He is a very good baseball hitter. He hit two home runs out of the park last year. I have a seven-year[-]old son who looks up to his big brother a lot. Wants to be a great hitter just like his older brother. In a similar way, that's what we have here. [Defendant's], older brother, tried to kill a rival gang member, December 31st, '07. His younger brother, [defendant], tried to kill a rival gang member two and a half months later."

Defense counsel responded to this argument in his own closing argument, stating, "[the prosecutor] says in essence that my client has a bigger brother, older brother that he wants to emulate. That's my big word. But there's no facts of that. That's no significance. That is something that [the prosecutor] is expressing as his view of the case; and his opinion on the case, it is not a fact.

"There's no fact that says [defendant] wants to be like his big brother." In rebuttal, the prosecutor argued, "And [defense counsel] said it's my opinion that [defendant] is trying to emulate his big brother. Well, that is my opinion. But my opinion is not what's most important. It's what your opinion is. The Evidence Code [*sic*] has shown that his older brother -- and I'm not exactly sure if it's the one in court. But his older brother did try to kill a rival [Norteño] gang member only two and a half months before [defendant] tried to kill a [Norteño] gang member. That definitely shows a pattern of violence by that family, a pattern of violence against the rival gang. A pattern of violence that shows that family is out to do whatever it takes for their gang."

We do not agree with defendant's conclusion that these statements in closing argument amounted to prosecutorial misconduct. " ' "It is settled that a prosecutor is

given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.]" ' " (*People v. Williams* (1997) 16 Cal.4th 153, 221.) The statements here were a fair comment on the evidence and included what was plainly the prosecutor's inference from that evidence. We also disagree with defendant's interpretation of the record. The prosecutor was not arguing that there was a familial propensity or disposition to commit crimes. The prosecutor was arguing that in shooting Pacheco, defendant was emulating the acts of his older brother, actively engaging in the gang's primary activity, and establishing the requisite pattern of criminal conduct. Defense counsel's statements in closing argument reveal that was his interpretation of the prosecutor's statements as well. "There was no misconduct, hence no ineffective assistance." (*Id.* at p. 224.)

## DISPOSITION

The judgment is affirmed.


_____ RAYE _____, P. J.


We concur:


_____ NICHOLSON _____, J.


_____ BUTZ _____, J.