1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SALVADOR LOPEZ,                              No.  2:16-cv-1310 MCE AC

12                      Petitioner,

13         v.                                      ORDER AND FINDINGS AND
                                                   RECOMMENDATIONS
14    PATRICK COVELLO,[1]

15                      Respondent.

16

17         Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed on June 10,

19    2016,[2] ECF No. 1, which challenges petitioner's 2008 conviction for attempted murder.

20    Respondent has answered, ECF No. 22, and petitioner has filed a traverse, ECF No. 25.

21    ////

22

23    [1]  The proper respondent in a habeas corpus action is the warden of the institution where
      petitioner is confined.  See 28 U.S.C. § 2254; Rule 2(a) of the Rules Governing Section 2254
24    Cases in the United States District Courts; Stanley v. California Supreme Court, 21 F.3d 359, 360
      (9th Cir. 1994).  Petitioner was transferred to Mule Creek State Prison in 2018.  ECF No. 26.
25    Accordingly, Patrick Covello, Warden of Mule Creek State Prison is substituted as the respondent
      and the Clerk of Court will be directed to correct the docket.
26    [2]  Because the timeliness of the petition is not disputed, the court need not consider application of
      the prison mailbox rule.  See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a
27    prisoner's court document is deemed filed on the date the prisoner delivered the document to
      prison officials for mailing).
28

                                                     1

1

BACKGROUND

2     I.      Proceedings in the Trial Court

3         A.  Preliminary Proceedings

4         Petitioner was a teenager charged as an adult in Sutter County in relation to a non-fatal,

5     gang-related shooting that occurred in March of 2008.  The information charged petitioner with

6     attempted premeditated murder (Cal. Penal Code §§ 664 and 187) and participation in a criminal

7     street gang (Cal. Penal Code § 186.22(a)).  As to the attempted murder charge, it was further

8     alleged that petitioner intentionally and personally discharged a firearm, causing great bodily

9     injury (Cal. Penal Code § 12022.53(d)), and that he committed the offense for the benefit of a

10    criminal street gang (Cal. Penal Code § 186.22(b)(1)(C)).  As to the participation in a street gang

11    charge, it was further alleged that petitioner personally used a firearm.  (Cal. Penal Code §

12    12022.5(a)(1).) CT 18-20.[3]

13        Petitioner moved pretrial for bifurcation of the gang charge and gang enhancement from

14    trial of the underlying charges.  The motion was denied.

15        B.  The Evidence Presented at Trial[4]

16          1.  Prosecution Case

17        Josiah Pacheco, a Norteño gang member, was walking down the street in Yuba City on the

18    night of March 12, 2008, when a green sedan suddenly stopped near him.  Three people got out of

19    the car and one said, "What's up?"  Pacheco responded, "[N]othing."  Then one of the people

20    from the green car started shooting at Pacheco.  Pacheco was struck through-and-through by six

21    bullets, none of which hit any vital structures.

22        Pacheco told responding officers that he was shot by "some Sureño."  He also identified

23    petitioner as the shooter.  Pacheco knew petitioner from time they had spent together in juvenile

24    hall.  Pacheco reported petitioner had "a problem" with Pacheco, because Pacheco had beaten up

25    _____

26    [3] "CT" refers to the Clerk's Transcript on Appeal.  "RT" refers to the Reporter's Transcript on
      Appeal.

27    [4] This statement is largely adapted from the opinion of the California Court of Appeal for the
      Third Appellate District, ECF No. 22-1 (Exhibit 1 to Answer).  The undersigned has

28    independently reviewed the trial transcripts and finds the summary to be accurate.

1  petitioner's older brother.  Pacheco also admitted he used to "gang bang" with the "Norte."

2         The day after the shooting, Pacheco was interviewed by police and again identified

3  petitioner as the shooter.  He also positively identified petitioner as the shooter in two separate

4  photographic lineups.  Pacheco stated he did not want to press charges because he did not want a

5  reputation.  Over the course of further interviews, Pacheco identified petitioner as the shooter on

6  two more occasions and stated that the people in the car were "southerners."  He also revealed

7  that petitioner's first name was Salvador.

8         Law enforcement arranged for Pacheco to participate in a pretext phone call with

9  petitioner.  Throughout the phone call, petitioner denied shooting Pacheco.  Petitioner did,

10  however, admit he was a gang member.

11         Prior to trial, Pacheco repeatedly told law enforcement he did not want to press charges

12  against petitioner and that at trial he would deny petitioner had shot him.  He also expressed

13  disdain for "snitches" and reported that a "snitch" would be killed by his own gang.  At trial,

14  Pacheco recanted his earlier statements identifying petitioner as the shooter.  He testified that

15  petitioner did not shoot him, and he did not know who had shot him.  He acknowledged that if he

16  did know who shot him, he would not confirm that law enforcement had the shooter; but in any

17  event, petitioner was not the shooter.  Pacheco also denied having previously fought with

18  petitioner's brother.

19         Officer Aaron Moe testified over defense objection as an expert on the Sureño criminal

20  street gangs.  He observed that the area where the shooting occurred was known for gang-related

21  activity.  Moe testified that gang members commit crimes to earn respect, and killing a rival gang

22  member would significantly increase a gang member's status.  The best way for gang members to

23  earn respect and increase their status is to commit acts of violence.  The more violent the crime,

24  the more status is earned.  Sureños and Norteños are rival gangs.  Moe explained that many

25  current gang members are "multi-generational or the brothers and sisters growing up, emulating

26  what older family members are doing."  Gang membership can be a "family tradition," and young

27  children have demonstrated significant gang knowledge based on education from their older

28  brothers, sisters, uncles, cousins, or parents.

Moe also testified that the Sureño gang's primary activities are crimes of violence. Petitioner had repeatedly admitted to Moe that he was a gang member, and stated that he had been one since sixth grade. Petitioner also had a gang-related tattoo, and multiple photographs showed him demonstrating gang hand signs. In December 2007 petitioner's brother Ignacio, his cousin Diego, and another Sureño gang member, Fidencio Mendoza, assaulted a rival Norteño gang member by shooting him. As a result, Ignacio and Mendoza were convicted of assault with a firearm. In November 2006 officers conducted a traffic stop on a vehicle containing petitioner and other Sureño gang members. Pedro Alvarado was a passenger, and officers found him carrying a loaded firearm. As a result, Alvarado was convicted of carrying a loaded firearm in public. Petitioner was adjudicated a ward of the court for carrying a concealed weapon in a vehicle. In 2005, petitioner was involved in an incident in which two Norteños were assaulted and property was taken from them. Petitioner assaulted one of the victims with a board. The people convicted of this offense were members of two local Sureño gangs.

Moe concluded that on March 12, 2008, petitioner was an active participant in the Sureño criminal street gang. Based on the fact that the victim was a documented Norteño gang member and the assault was committed by a Sureño gang member with a handgun, Moe opined that a hypothetical offense resembling the facts of this case would have been committed for the benefit of, in association with, or at the direction of the Sureño criminal street gang.

Moe also offered an explanation for Pacheco's reticence to cooperate with law enforcement as the trial approached. Gang members had told Moe that when a gang member like Pacheco cooperates with law enforcement, he loses respect within the gang structure. Accordingly, the majority of victims who are gang members do not cooperate with the prosecution.

      2.  <u>Defense Case</u>

Petitioner took the stand and denied shooting Pacheco. He testified that he was at home babysitting his younger brother at the time of the shooting. Petitioner's mother testified that she regularly left her four-year-old son in petitioner's care when she went to work, and had done so on the afternoon and evening of March 12, 2008. Petitioner's father was also at home that night,

4

1   having completed his own shift at the packing plant where both worked.  He testified that he

2   regularly went to sleep early, and that petitioner generally looked after his younger brother in the

3   evenings.  The senior Mr. Lopez had no specific memory of Mary 12, 2008.

4          Petitioner admitted telling Moe that he is a Sureño, but he explained that he simply meant

5   he was from the south, Mexico.  He denied ever telling Moe he was in a gang.  He admitted

6   associating with known gang members and making gang signs in photographs, but he claimed

7   that was just to "fit in."  Petitioner acknowledged that his brothers, Ignacio and Juan, were Sureño

8   gang members but claimed they had dropped out.  He admitted he had a conviction for battery

9   with serious bodily injury and a gang enhancement.  He stated he had stabbed a rival gang

10  member "to be cool."  He also got tattoos of the number 13 when he was in juvenile hall because

11  he thought it was "cool."  (Moe had testified that the number 13 is important to Sureños because it

12  represents the 13th letter of the alphabet, "M," which stands for "Mexican Mafia."  Sureños affiliate

13  themselves with the Mexican Mafia.)

14         Petitioner acknowledged that when he was younger, he wanted to be in the gang, but

15  ultimately that had gotten him into trouble.  Specifically, he had admitted being in possession of a

16  gun after being told he could not win at trial and was sent to a youth guidance center.  Since his

17  release from the guidance center he had tried, albeit unsuccessfully, to stay out of trouble.  He

18  claimed the "trouble" was not gang related.  He acknowledged he had seen Pacheco somewhere

19  but did not recall that Pacheco had ever beaten up his brother.  Petitioner stated that in the phone

20  call with Pacheco, he had admitted being a gang member because he was "playing along" with

21  the caller.

22         C.  Outcome

23         The jury found petitioner guilty of the attempted murder and substantive gang

24  participation charges, and found all the enhancement allegations true.  After finding that the

25  information had not properly alleged premeditated attempted murder, the trial court sentenced

26  petitioner to the upper term of nine years for attempted murder plus 25 years to life for the

27  firearm enhancement, and the upper term of three years for active participation in a street gang

28  plus 10 years for the firearm enhancement.  The sentence on the street gang conviction was

5

1    stayed.  The street gang enhancement allegation was struck in the interest of justice.  CT 296.

2        II.    Post-Conviction Proceedings

3        Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

4    conviction on February 18, 2015.  ECF No. 22-1 (Exhibit 1 to Answer).  A petition for rehearing

5    was denied on March 20, 2015.  ECF No. 22-2 (Exhibit 2 to Answer).  The California Supreme

6    Court denied review on June 10, 2015.  ECF No. 22-3 (Exhibit 3 to Answer).

7        On August 17, 2015, petitioner filed a habeas corpus petition in the Sutter County Superior

8    Court.  Lodged Doc. 8.  The petition was denied November 3, 2015 (ECF. No 22-4), and an amended

9    order denying the petition was filed November 20, 2015 (ECF No. 22-5).[5]

10       Petitioner filed two habeas corpus petitions in the California Court of Appeal.  The first was

11   filed on January 31, 2014, before the California Court of Appeal had affirmed the judgment on direct

12   appeal.  Lodged Doc. 9.  This petition was denied on February 13, 2014.  ECF No. 22-6 (Exhibit 6 to

13   Answer).  The second petition was filed January 27, 2016.  Lodged Doc. 10.  This petition was

14   summarily denied on February 4, 2016.  ECF No. 22-7 (Exhibit 7 to Answer).

15       On March 21, 2016, petitioner filed a petition for writ of habeas corpus in the California

16   Supreme Court.  Lodged Doc. 11.  The petition was summarily denied on May 25, 2016.  ECF No.

17   22-8 (Exhibit 8 to Answer).

18       STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

19       28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

20   1996 ("AEDPA"), provides in relevant part as follows:

21           (d) An application for a writ of habeas corpus on behalf of a person
22       in custody pursuant to the judgment of a state court shall not be
         granted with respect to any claim that was adjudicated on the merits
         in State court proceedings unless the adjudication of the claim –
23

24           (1) resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or
25

26           (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
         State court proceeding.
27

28   _____
     [5]  Exhibits 4 and 5 to Answer.

1    The statute applies whenever the state court has denied a federal claim on its merits,

2    whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

3    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

4    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

5    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

6    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

7    may be overcome when there is reason to think some other explanation for the state court's

8    decision is more likely."  Id. at 99-100.

9    The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

10   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

11   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

12   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

13   issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

14   (2013).

15   A state court decision is "contrary to" clearly established federal law if the decision

16   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

17   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

18   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

19   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

20   was incorrect in the view of the federal habeas court; the state court decision must be objectively

21   unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

22   Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

23   Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

24   reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

25   words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

26   Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

27   confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

28   724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

1   summarily, without a reasoned opinion.  In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a

2   state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

3   must determine what arguments or theories may have supported the state court's decision, and

4   subject those arguments or theories to § 2254(d) scrutiny.  <u>Richter</u>, 563 U.S. at 102.

5                                       DISCUSSION

6       I.       Claim One: Actual Innocence

7                    A.   Petitioner's Allegations and Pertinent State Court Record

8           Petitioner alleges that new evidence establishes his innocence of the crimes for which he

9   was convicted.  Petitioner relies on a 2015 declaration from Josiah Pacheco, the shooting victim,

10  who states that he was shot in a "drug deal gone bad" and that petitioner was not involved.

11  Pacheco also declares that he was pressured by police officers to make false statements

12  incriminating petitioner.  ECF No. 1 at 38-40.

13                   B.   The Clearly Established Federal Law

14          There is no "clearly established federal law" that recognizes a substantive constitutional

15  right not to be criminally convicted if innocent.  <u>See</u> <u>Herrera v. Collins</u>, 506 U.S. 390, 404 (1993);

16  <u>District Attorney's Office v. Osborne</u>, 557 U.S. 52, 71-72 (2009) (recognizing that the Supreme

17  Court has not decided the issue).  In procedural contexts where "actual innocence" may be

18  relevant to federal habeas proceedings, the standard is high: a petitioner must present reliable new

19  evidence, in light of which no reasonable jury would have convicted him.  <u>See</u> <u>Schlup v. Delo</u>,

20  513 U.S. 298 (1995) (actual innocence as exception to procedural default); <u>McQuiggin v. Perkins</u>,

21  569 U.S. 383 (2013) (actual innocence as basis for equitable tolling of statute of limitations).

22                   C.   The State Court's Ruling

23          Because the California Supreme Court denied this claim without comment, ECF No. 22-8,

24  this court "looks through" the silent denial to the last reasoned state court decision.  <u>See</u> <u>Ylst v.</u>

25  <u>Nunnemaker</u>, 501 U.S. 797 (1991).  Because the superior court issued the only reasoned decision

26  adjudicating the claim, that is the decision reviewed for reasonableness under § 2254(d).  <u>See</u>

27  <u>Bonner v. Carey</u>, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

28  ////

1    The superior court ruled as follows:

2        Petitioner has offered no newly discovered evidence that could
         possibly cast fundamental doubt on the accuracy and reliability of the
3        proceedings. Witness Pacheco maintained during the trial that the
         defendant did not shoot him. The jury obviously did not find the
4        witness' testimony credible. There is no reason to believe that the
         "new" details offered by the witness would have produced a different
5        result.

6    ECF No. 22-5.

7        D.  Objective Reasonableness Under § 2254(d)

8        As noted above, the U.S. Supreme Court has never held that actual innocence provides a

9    free-standing constitutional basis for relief from a non-capital conviction. See Herrera, 506 U.S.

10   at 404; District Attorney's Office v. Osborne, 557 U.S. at 71-72. Where there is no "clearly

11   established law" within the meaning of § 2254(d), there can be no unreasonable application of

12   federal law by the state court. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per

13   curiam). Accordingly, AEDPA bars federal relief on petitioner's innocence claim.

14       The court notes that even if petitioner could seek habeas relief upon a showing of "actual

15   innocence," his showing falls far short of the standard recognized for other federal habeas

16   purposes. To demonstrate innocence, a petitioner must begin by producing "new reliable

17   evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

18   critical physical evidence—that was not presented at trial." Schlup, 513 U.S. at 324. The

19   recantation evidence presented here does not satisfy this reliability standard. To the contrary,

20   courts have long recognized that that recantation evidence is suspect. Allen v. Woodford, 395

21   F.3d 979, 994 (9th Cir. 2005); see also Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984)

22   (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed

23   with great suspicion.").

24       The ultimate question regarding innocence under Schlup is not whether a jury could have

25   believed Pacheco's new recantation, but whether no reasonable jury could have convicted

26   petitioner in light of it. House v. Bell, 547 U.S. 518, 538 (2006). All the evidence, both the trial

27   evidence and the newly presented evidence, must be considered in this context. Id. Petitioner's

28   jury heard Josiah Pacheco deny that petitioner shot him, and heard the evidence that he had

9

1    previously identified petitioner but refused to testify to the identification.  The jury heard a gang

2    expert explain why gang members often refuse to cooperate with the prosecution.  In the end, the

3    jury did not believe the recantation.  In light of the evidence as a whole, a reasonable jury

4    informed of Pacheco's post-trial explanation of his recantation could also disbelieve him.

5    Accordingly, petitioner's innocence claim would fail on the merits even without reference to §

6    2254(d).

7    II.    Claim Two: Violation of Confrontation Rights by Expert Witness Reliance on

8    Testimonial Hearsay, and Related Ineffective Assistance of Counsel

9    A.  Petitioner's Allegations and Pertinent State Court Record

10   Petitioner claims that the gang expert relied on testimonial hearsay in violation of his

11   confrontation rights.  Claim Two targets Officer Moe's testimony that several of petitioner's

12   family members and Fidencio Mendoza, a Sureño associate and previous co-defendant of

13   petitioner's brother Ignacio, had admitted their gang membership.  Petitioner also alleges that

14   counsel rendered ineffective assistance by failing to object to the improper admission of

15   unconstitutional hearsay.

16   Petitioner moved in limine to exclude "incompetent" hearsay testimony from the

17   prosecution's gang expert and otherwise limit the gang-related evidence and expert testimony.

18   CT 127-143.  The trial court held a hearing pursuant to California Evidence Code § 402, and

19   ruled the expert testimony admissible.  RT 409-423.  At no time during that hearing was there any

20   discussion of Crawford v. Washington or the Confrontation Clause.  See id.

21   Officer Moe testified in pertinent part as follows.[6]  His general duties in the gang

22   suppression unit included contacting gang members in the local area, documenting their activities,

23   participating in gang-related probation searches and gang sweeps, and reviewing field contact

24   reports and outside agency reports about gang activity.  Officer Moe spoke regularly with gang

25   members and associates, sometimes a on daily basis.  For the most part, they were willing to

26   speak with him on the street and were open about their gang memberships. They were less open

27

28   [6]  Officer Moe's testimony is at RT 433-514.

1  and cooperative about admitting their gang memberships when they were being interviewed or

2  interrogated.

3       Officer Moe testified, among other things, that petitioner's brothers Juan and Ignacio had

4  admitted being gang members.  The jury was shown photographs of petitioner with these

5  brothers, wearing "gang clothing" and reflecting other indicia of gang affiliation.  Moe also

6  testified that various other individuals who appeared in photographs with petitioner had admitted

7  to being gang members.  Moe testified about an assault with a firearm in which both Fidencio

8  Mendoza and petitioner's brother Ignacio were involved.  Each was convicted of assault with a

9  firearm and commission of an act for the benefit of a street gang.  Moe had personally spoken

10  with Ignacio several times, and Ignacio had admitted his gang membership.  Moe had also spoken

11  with Mendoza, who admitted his gang membership.

12       B.  The Clearly Established Federal Law

13       1.  Confrontation Clause

14       The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall

15  enjoy the right to . . . be confronted with the witnesses against him."  The Confrontation Clause

16  prohibits the admission of testimonial out-of-court statements by non-testifying individuals.

17  Crawford v. Washington, 541 U.S. 36 (2004).  Not all hearsay implicates the core concerns of the

18  Confrontation Clause; the dispositive question is whether the statement is "testimonial."  Id. at 51.

19  A statement is testimonial only when its primary purpose is the development of evidence to

20  support a prosecution.  Davis v. Washington, 547 U.S. 813, 822 (2006); Michigan v. Bryant, 562

21  U.S. 344, 359 (2011).

22       2.  Ineffective Assistance of Counsel

23       To establish a constitutional violation based on ineffective assistance of counsel, a

24  petitioner must show (1) that counsel's representation fell below an objective standard of

25  reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland

26  Washington, 466 U.S. 668, 692, 694 (1984).  The proper measure of attorney performance is

27  objective reasonableness under prevailing professional norms.  Id. at 688.  Prejudice means that

28  the error actually had an adverse effect on the defense and that there is a reasonable probability

11

1   that, but for counsel's errors, the result of the proceeding would have been different.  Id. at 693-

2   94.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

3   Id.

4           C.  The State Court's Ruling

5           This claim was raised on direct appeal.  Because the California Supreme Court denied

6   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

7   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

8   501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

9           The Court of Appeal's discussion of confrontation issues is set forth at ECF No. 22-1, pp.

10   14-24.  The court first set forth the rule of Crawford and progeny, then found that the claim had

11   been forfeited by counsel's failure to object on confrontation grounds (rather than generic hearsay

12   grounds) when Moe testified.  Id. at 15-16, 20-22.  The court then proceeded to address the merits

13   of the claim as follows:

14           […]  In Any Event, Defendant's Confrontation Rights Were Not
             Violated
15

16           To prevail on a claim of ineffective assistance of counsel, defendant
             must establish both that counsel's performance was deficient and the
             errors were prejudicial. If he fails to establish one prong, we need not
17           address the other. (Strickland v. Washington (1984) 466 U.S. 668,
             687-688, 691-692; People v. Ledesma (1987) 43 Cal.3d 171, 216-
18           218.) Defendant cannot meet that burden here. Defendant claims that
             counsel was ineffective for failing to object to the admission of
19           Moe's testimony that Juan, Ignacio, and Mendoza had admitted to
             him they were gang members. As to these claims, we find the
20           statements were not testimonial and therefore Crawford does not
             apply. . . .   An objection based on the confrontation clause would
21           have been without merit.

22           . . .  Moe testified he spoke with gang members daily and they were
             willing to speak with him openly about their gang memberships.  He
23           also testified Juan, Ignacio, and Mendoza had admitted their gang
             memberships. There was, however, no indication in the testimony
24           about the context of those conversations or the circumstances under
             which they took place. There is nothing in the record that indicates
25           the conversations occurred as part of a police interrogation, had any
             degree of formality or solemnity, or were procured with the primary
26           purpose of creating an out-of-court substitute for trial testimony.
             (People v. Valadez (2013) 220 Cal.App.4th 16, 36 (Valadez).) In
27           fact, Moe's testimony that gang members disclaim their gang
             memberships in the context of interrogations and police interviews
28           suggests the contrary.

                                          12

1

2

3

4

5

6

7

8

9

> Not every conversation between a police officer and a gang member is necessarily conducted with the purpose of creating a testimonial substitute for use in a future prosecution. Police officers may have conversations with gang members for multiple reasons. "Day in and day out such information would be useful to the police as part of their general community policing responsibilities quite separate from any use in some unspecified criminal prosecution." (Valadez, supra, 220 Cal.App.4th at p. 36.) The information could also be gathered to deter future criminal activity or maintain institutional security or safety of those already incarcerated. Given Moe's testimony that he had many casual, consensual conversations with gang members in which they openly admitted their gang memberships, we cannot conclude Moe's multiple conversations with Ignacio, Juan, and Mendoza were testimonial. Because the statements of Ignacio, Juan, and Mendoza admitting their gang memberships were not testimonial, counsel was not ineffective in failing to raise a confrontation clause objection.

10   ECF No. 22-1 at 20-24.

11       D. Objective Reasonableness Under § 2254(d)[7]

12       The state court's finding that the statements made by Juan, Ignacio, and Mendoza to

13   Officer Moe were not testimonial within the meaning of Crawford cannot be considered

14   objectively unreasonable.  It is clearly established that not all statements made to law enforcement

15   officers are testimonial.  For example, the Supreme Court held in Davis v. Washington, supra,

16   that 911 calls and statements to police regarding ongoing emergencies are non-testimonial.  The

17   Court explained that statements are testimonial when "the primary purpose of the interrogation is

18   to establish or prove past events potentially relevant to later criminal prosecution."  Davis, 547

19   U.S. at 822.

20       Officer Moe's testimony reasonably supports a conclusion that the statements were made

21   to him in the course of his frequent community contacts with gang-affiliated individuals on the

22   streets, rather than in the course of investigation of any specific crime.  Such informal

23   conversations serve many public safety purposes other than the development of evidence to

24

25

26

27

28

---

[7]  Respondent contends that the substantive confrontation clause claim is procedurally defaulted in this court, because the state court ruled as a matter of state law that it had been forfeited. ECF No. 22 at 24-26.  As set forth above, the state court nonetheless proceeded to rule on the merits of the claim.  A federal habeas court may bypass a procedural default to reach the merits of a non-meritorious claim.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (explaining that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits).  The court elects to do so with respect to this claim.

1 support a prosecution based on past events, and the speakers certainly cannot be presumed to

2 have spoken with the intention of providing evidence for use in a criminal prosecution.  See

3 Davis, 547 U.S. at 822; Michigan v. Bryant, 562 U.S. at 367-368 (intent of both questioner and

4 speaker is relevant to determination whether a statement is testimonial).  Accordingly, it was

5 reasonable of the California Court of Appeal to conclude that the statements were not testimonial

6 within the meaning of Crawford and progeny.

7       The California Court of Appeal also reasonably held that where hearsay is not testimonial,

8 failure to raise a Crawford objection cannot support a Strickland claim.  Counsel's failure to make

9 a meritless objection cannot constitute deficient performance or prejudice the defendant.   Absent

10 an objectively unreasonable application of Strickland, § 2254(d) bars relief for ineffective

11 assistance of counsel.

12      For these reasons, petitioner is not entitled to relief on Claim Two.

13  III.    Claim Three: Admission of Hearsay in Sheriff's Reports Violated Confrontation

14          Clause

15          A.  Petitioner's Allegations and Pertinent State Court Record

16      Claim Three also alleges that the gang expert relied on testimonial hearsay, in violation of

17 petitioner's confrontation rights.  This claim targets Officer Moe's testimony about the facts of a

18 juvenile offense, taken from a Sheriff's Department report.

19      Officer Moe testified about a 2005 case in which petitioner sustained a juvenile

20 adjudication for battery with serious injury and a gang enhancement.  Petitioner had entered

21 admissions to these offenses, and as a condition of probation was ordered to register as an illegal

22 street gang member.  Moe also testified about the contents of a sheriff's report describing the facts

23 leading to that adjudication, as follows.  Two documented Norteño members, Benny Castro and

24 Ricky Diaz, were walking when they saw approximately 10 subjects wearing blue.  As Norteños,

25 they assumed the subjects wearing blue were Sureños.  They tried to flee, but the group caught

26 them.  The group assaulted Castro and Diaz, hitting them several times with hands, feet, and

27 boards.  At the end of the assault, Castro's shoes and Diaz's cell phone and jacket were stolen.

28 Petitioner's involvement in the assault was "that he was identified by one of the co-defendants,

Anthony Mendoza. . . as being involved.  Benny Castro identified Salvador as the subject that hit him with the board."

Defense counsel objected on hearsay grounds to Moe's testimony detailing petitioner's involvement in the assault.  The trial court overruled the objection.  There was no objection on the basis of <u>Crawford</u> or the Confrontation Clause.

### B.  The Clearly Established Federal Law

As explained above, the Confrontation Clause prohibits the admission of testimonial out-of-court statements by non-testifying individuals.  <u>Crawford</u>, 541 U.S. 36.  The Confrontation Clause is implicated only when an out-of-court statement is "testimonial."  <u>Id.</u> at 51.  A statement is testimonial when its primary purpose is the development of evidence to support a prosecution. <u>Davis</u>, 547 U.S. at 822; <u>Bryant</u>, 562 U.S. at 359.

### C.  The State Court's Ruling

This claim was also raised on direct appeal, and the opinion of the California Court of Appeal is the subject of habeas review here.  <u>See Ortiz</u>, 704 F.3d at 1034.

The Court of Appeal considered this issue together with petitioner's previously discussed <u>Crawford</u> claim.  ECF No. 22-1 at 14-24.  The Court found the issue forfeited by counsel's failure to object expressly on <u>Crawford</u> grounds at trial, but went on to hold that the substantive claim and related assertion of ineffective assistance failed on the merits:

> Defendant also contends counsel was ineffective for failing to object on confrontation clause grounds to Moe's testimony setting forth the contents of the sheriff's report detailing the facts underlying defendant's juvenile adjudication for battery with great bodily injury and a gang enhancement. However, as to this testimony, defendant had previously waived his confrontation rights as to those charges when he entered an admission to the offenses. An objection based on the confrontation clause would have been without merit.
>
> … Defendant was adjudicated for battery with great bodily injury and a gang enhancement in 2005 based on his admission to both offenses. In juvenile proceedings, the court must explicitly advise the minor of his right to confront and cross-examine witnesses, and in making an admission to the charges, the minor must waive those rights. The court is required to make an explicit finding that the minor waived his right to confront and cross-examine witnesses. (Cal. Rules of Court, rule 5.778.)

15

1
2
3
4
5

> *Crawford* is not violated if the defendant had a prior opportunity to cross-examine the declarant. (*People v. Angulo* (2005) 129 Cal.App.4th 1349, 1368.) Here, defendant had the opportunity to confront and cross-examine the victims and the officers in the juvenile case when the matters were being adjudicated in the juvenile courts in 2005 by going to trial on the charges. By electing not to do so, he necessarily waived his right of confrontation. (*Ibid.*) The right to confrontation is not Lazarus-like, resurrected after it is waived when the defendant is charged with additional offenses.

6
7

> Here, defendant's confrontation rights were satisfied in the juvenile proceeding. He waived them. He cannot now reclaim them. Accordingly, counsel was not ineffective for failing to raise a *Crawford* objection to the testimony regarding the sheriff's report.

8

9
ECF No. 22-1 at 23, 24.

10
    D.  Objective Unreasonableness Under § 2254(d), and Merits[8]

11      The undersigned is puzzled by the California Court of Appeal's blanket assertion that

12 petitioner's waiver of his confrontation rights in the course of his juvenile adjudication waived his

13 rights to confront witnesses from that case when their statements were used against him in a

14 different case for a different purpose.  The Sixth Amendment provides that "in *all* criminal

15 prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against

16 him." (emphasis added).  The right to confront witnesses is a trial right, and it is axiomatic that all

17 trial-related rights are forfeited for purposes of the case in which a defendant chooses to plead

18 guilty or admit allegations.  That does not necessarily mean that a defendant has no independently

19 arising trial rights if other charges are later pursued that involve the same events, or as to which

20 evidence from the previous proceeding may be relevant.  Petitioner here did not, for example,

21 lose his right to testify on his own behalf in defense of the substantive gang charge because he

22 had waived that right as to the juvenile proceeding's gang allegation.  Defendant here is not

23 seeking to revive the confrontation rights that he waived in the juvenile case, he is asserting a

24 different right: to confront those declarants whose testimonial statements were used against him at

25 the 2008 trial, in the 2008 trial.

26

27
28
[8]  As with Claim Two, respondent asserts the affirmative defense of procedural default.  ECF No. 22 at 24-26.  As with Claim Two, the undersigned exercises the court's discretion to bypass the issue.  See Lambrix, 520 U.S. at 525.

1    Neither the California Court of Appeal nor either party in this court cites clearly

2    established rules of federal constitutional law that govern the scope of a confrontation waiver

3    beyond the proceeding in which the waiver is made.  This absence of governing precedent would

4    itself defeat petitioner's claim if AEDPA applies.  See, Wright, 552 U.S. at 125-26.  However,

5    this court's review under § 2254(d) must first address the reasonableness of the state court's

6    actual decision.  Frantz v. Hazey, 533 F.3d at 738.  If the state court unreasonably applied clearly

7    established federal law, then AEDPA limits on relief do not apply and the federal court evaluates

8    the claim de novo.  Id. at 737.

9    Apart from the issue of waiver, the appellate court's statement that "Crawford is not

10   violated if the defendant had a prior opportunity to cross-examine the declarant" takes the quoted

11   principle out of its doctrinal context.  The Crawford court reiterated the familiar rule that *when a*

12   *witness is unavailable at trial*, that witness's testimonial statements may be used if there was a

13   prior opportunity for cross-examination.  Crawford, 541 U.S. at 59.  This rule permits, for

14   example, preliminary hearing testimony to be admitted at trial when a witness cannot be located

15   or refuses to testify at trial.  It has no application here, because the declarants from the sheriff's

16   reports were not unavailable witnesses whose prior statements were being offered on that basis.

17   The California Court of Appeal's misstatement of the rule regarding prior opportunity for

18   cross-examination may well constitute an objectively unreasonable application of clearly

19   established federal law.  But even if it does, and if petitioner's claim therefore is not subject to §

20   2254(d)'s limits on relief, petitioner cannot prevail on the merits of this claim under de novo

21   review.  See Frantz, 533 F.3d at 737.  Assuming without deciding that the statements at issue here

22   are testimonial within the meaning of Crawford,[9] and were considered by the jury as substantive

23   evidence on Count Two (participation in a criminal street gang),[10] this claim would nonetheless

24   _____

25   [9]  The statements of Benny Castro and Anthony Mendoza appear to have been obtained by law
     enforcement officers who were investigating past events for the purpose of identifying, charging

26   and prosecuting the culprit.  See Davis, 547 U.S. at 822.

     [10]  The undersigned is unpersuaded by respondent's contention that the statements were not
27   introduced for the truth of the matter asserted but as foundation for Officer Moe's expert opinion.
     ECF No. 22 at 26, 27.  Moe did offer an opinion that a hypothetical offense resembling the facts
28   of this case would have been committed for the benefit of a criminal street gang.  However, he

1    fail for lack of prejudice.  Violations of the Confrontation Clause are subject to harmless error

2    analysis.  Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).  In the habeas context, an error is

3    deemed harmful if it had a "substantial and injurious effect or influence" on the jury's verdict.

4    See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  There is no likelihood of such an influence

5    here.

6         Officer Moe's direct examination testimony regarding the facts of the 2005 juvenile

7    assault fills less than three transcript pages.  RT 489-491.  The other evidence of petitioner's gang

8    affiliation was extensive.  Most significantly, petitioner had admitted his gang affiliation to

9    Officer Moe on previous occasions.  Officer Moe also testified about petitioner's 2006 juvenile

10   adjudication for carrying a concealed weapon in a vehicle.  Officer Moe had been one of the

11   arresting officers in that case, and testified to his own observations of petitioner's conduct (riding

12   in a car that contained firearms, with known gang members, while on juvenile probation, and

13   trying to move one of the guns out of view with his foot when stopped by police).  RT 486-488.

14   The jury also saw photographic evidence of petitioner associating with known gang members,

15   wearing gang-affiliated clothing, making gang signs, and sporting gang-affiliated tattoos.  And

16   the jury heard petitioner's recorded statement to Josiah Pacheco, claiming gang membership.

17         In sum, even without regard to the facts of the 2005 assault, the jury had an ample and

18   persuasive evidentiary basis for concluding that petitioner was actively participating in a criminal

19   street gang.  In light of all the evidence as a whole, it is highly unlikely that Moe's testimony

20   about the hearsay statements of Benny Castro and Anthony Mendoza (or any other hearsay

21   statements in the sheriff's report) had a "substantial and injurious effect or influence" on the

22   verdict.[11]  Accordingly, the confrontation claim fails on the merits without reference to § 2254(d).

23   _____

24   did not expressly testify that the sheriff's report of the juvenile incident was a basis for that
     opinion.  Moreover, the jury was not instructed that it could consider the facts of the juvenile
25   incident only in evaluating the expert opinion.   The only such limiting instruction addressed
     petitioner's own statements to Moe.  CT 195. It is therefore not unlikely that the jury considered
26   the accounts of that incident as substantive evidence on Count Two.

27   [11]  Count Two required proof both that petitioner was an active participant in the gang, and that he
     was aware of a pattern of criminal activity on the part of the gang.  A pattern means two or more
     specified felonies, which can include the offense charged in Count One.  See CT 212-213
28   (CALCRIM 1400); Cal. Penal Code § 186.22(A).  Disregarding the 2005 assault of Benny Castro

1    Petitioner's related ineffective assistance of counsel claim also fails for lack of prejudice

2    under any standard of review.  See Strickland, 466 U.S. at 693-694.  Even assuming without

3    deciding that an objection based on the Confrontation Clause was meritorious, the foregoing

4    analysis demonstrates that the outcome of the trial would likely have been no different.

5    Accordingly, petitioner was not prejudiced within the meaning of Strickland and any error by

6    counsel does not affect the validity of his conviction.  The state court's rejection of the claim was

7    not unreasonable.

8    For all these reasons, Claim Three fails on the merits with or without reference to AEDPA

9    standards.

10    IV.    Claim Four: Admission of Gang Evidence Violated Due Process

11        A.  Petitioner's Allegations and Pertinent State Court Record

12    Petitioner alleges that the evidence of his own prior offenses, and those of various family

13    members, was irrelevant and so prejudicial as to violate due process.

14    As previously noted, Officer Moe testified about a number of offenses involving petitioner

15    and his family members, and testified about the involvement of many of petitioner's family

16    members in the Sureño gang.  Specifically, Moe informed the jury that in March of 2005,

17    petitioner and nine other Sureño-affiliated youths attacked two Norteños.  Petitioner was

18    adjudicated for battery with serious injury with a gang enhancement.  After a traffic stop in

19    November of 2006, Pedro Alvarado, a Sureño, was convicted of carrying a loaded firearm in

20    public.  Petitioner was also in the car and was adjudicated as a ward of the court for carrying a

21    concealed weapon in a vehicle.  In May of 2008 Fidencio Mendoza, a Sureño, and petitioner's

22    brother Ignacio were convicted of assault with a firearm.  Petitioner's two older brothers and two

23    cousins were also active members of the Sureño gang.

24    ////

25    ////

26    _____

27    —and setting aside the question whether the fact of petitioner's adjudication in that case would
have come into evidence even if the hearsay statements regarding the underlying facts had not—
the required pattern is established here by the evidence of the Pacheco shooting (Count One) and

28    the evidence of the prior assault convictions of petitioner's cousin Ignacio and Fidencio Mendoza.

B. The Clearly Established Federal Law

The erroneous admission of evidence violates due process only if the evidence is so irrelevant and prejudicial that it renders the trial as a whole fundamentally unfair. Estelle v. McGuire, 502 U.S. 62 (1991). Otherwise, evidentiary ruling are matters of state law that do not support federal habeas relief. Id. at 67-68; see also Pulley v. Harris, 465 U.S. 37 (1984). The Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial or unreliable evidence. See Spencer v. Texas, 385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 565 U.S. 228, 245 (2012); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that the Supreme Court has never held that the admission of any type of evidence violates due process).

C. The State Court's Ruling

This issue was raised on direct appeal, and the opinion of the California Court of Appeal is the subject of habeas review here. See Ortiz, 704 F.3d at 1034.

The Court of Appeal ruled as follows:

> Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1014.) 'We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352. [Citation.] ...' (People v. Kipp (2001) 26 Cal.4th 1100, 1121.)" (People v. Zepeda (2008) 167 Cal.App.4th 25, 34–35.) "'Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt.' [Citation.]" (People v. Tran (2011) 51 Cal.4th 1040, 1048 (Tran).)
>
> In asserting that the evidence of defendant's and his relatives' prior offenses had little or no probative value, defendant's argument disregards the fact that he was charged with not only a gang enhancement, but also with a substantive gang offense. Proof of the gang enhancement required, among other things, evidence that the gang's "members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f); see id. at subd. (e).) A "pattern of criminal gang activity" is defined as gang members' individual or collective "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more" enumerated predicate offenses during a statutorily defined time

20

period. (§ 186.22, subd. (e); <u>see</u> <u>People v. Gardeley</u> (1996) 14 Cal.4th 605, 617.) The predicate offenses must have been committed on separate occasions, or by two or more persons. (§ 186.22, subd. (e); <u>People v. Loeun</u> (1997) 17 Cal.4th 1, 9–10.) The substantive gang offense required the prosecution to prove defendant's "(1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (<u>People v. Albillar</u> (2010) 51 Cal.4th 47, 56 (<u>Albillar</u>).)

Here, the evidence defendant complains of was relevant on the issues of the pattern of criminal conduct, defendant's active participation in the gang, and his knowledge of the gang's purpose. The evidence of defendant's prior offenses and those in which his family members were involved was relevant to establish the predicate offenses underlying the pattern of criminal conduct. To the extent defendant argues the offenses of Sureños other than defendant and his family members could have been utilized instead, the prosecution was not required to so sanitize its case. "That the prosecution might be able to develop evidence of predicate offenses committed by other gang members ... does not require exclusion of evidence of a defendant's own separate offense to show a pattern of criminal gang activity." (<u>Tran</u>, supra, 51 Cal.4th at p. 1049.) Moreover, the evidence of defendant's prior offenses, including the battery with a gang enhancement, which could not serve as a predicate offense, was relevant to establish that defendant's involvement with the gang was not nominal or passive. Rather, defendant and at least one other gang member engaged in an assault against rival gang members. Finally, the evidence that defendant's family members had been involved in gang-related offenses was relevant to establish defendant had knowledge "that the gang's members engage in or have engaged in a pattern of criminal gang activity." (<u>Albillar</u>, supra, 51 Cal.4th at p. 56.) Thus, the evidence complained of was highly probative to establish a number of elements of the charged offenses.

Furthermore, we cannot find the evidence was unduly prejudicial. Where, as here, "the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities. That the defendant [and his family members were] personally involved in some of those activities typically will not so increase the prejudicial nature of the evidence as to unfairly bias the jury against the defendant." (<u>Tran</u>, supra, 51 Cal.4th at p. 1048.) In short, the use of evidence of a defendant's prior offenses and the offenses of his family members did not "create 'an intolerable "risk to the fairness of the proceedings or the reliability of the outcome."'" [Citation.]" (Ibid.) Accordingly, we find there was no abuse of discretion in admitting evidence of defendant's prior gang-related offenses or those of his family members.

ECF No. 22-1 at 9-12.

1          D.  Objective Unreasonableness Under § 2254(d)

2          The appellate court's resolution of the relevance issue is governed by the substantive

3    criminal law of California, and therefore is not subject to review here.  See Lewis v. Jeffers, 497

4    U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law); Bradshaw

5    v. Richey, 546 U.S. 74, 76 (2005) (federal habeas court is bound by a state court's interpretation

6    of state law, including in case at bar).  And because the evidence of prior gang-related bad acts

7    and associations with other gang members was relevant to the substantive gang offense under

8    state law, its admission (absent fundamental unfairness on some basis other than asserted

9    irrelevance) cannot have violated due process.  See Estelle, 502 U.S. at 70 (finding no due

10   process violation where the evidence sought to be admitted is relevant to the case).[12]

11         Moreover, because the U.S. Supreme Court has never held that admission irrelevant or

12   even inflammatory evidence violates due process, AEDPA bars this claim.  See Holley, 568 F. 3d

13   at 1101 (recognizing that Supreme Court has never "made a clear ruling that admission of

14   irrelevant or prejudicial evidence constitutes a due process violation sufficient to warrant issuance

15   of the writ."); Wright, 552 U.S. at 125-26 (AEDPA bars claim where no Supreme Court

16   precedent establishes rule petitioner relies on).

17         Even if general due process principles are considered to constitute "clearly established

18   federal law," petitioner cannot meet the standard set by § 2254(d) because the state court's

19   fundamental fairness analysis was not objectively unreasonable.  The U.S. Supreme Court has

20   explained that the improper admission of evidence does not render a trial fundamentally unfair

21   where the evidence is subject to adversarial testing, and the jury is properly instructed.  Dowling

22   v. United States, 493 U.S. 342, 353 (1990) (rejecting argument that admission of acquitted

23   conduct rendered trial fundamentally unfair).  Here, Officer Moe was subject to cross-

24   examination regarding the information at issue and the sources from which he obtained it, and

25   petitioner's confrontation rights were not violated by the hearsay portions of his testimony for the

26   _____

27   [12]  To the extent that petitioner means to argue his attempted murder verdict was unfairly
     influenced by the gang evidence, the undersigned notes that the trial court's denial of petitioner's
28   motion to bifurcate the charges was affirmed on appeal.  See ECF No. 22-1 at 7-9.  Petitioner has
     not pursued that issue here, and it has thus been forfeited.

1   reasons previously explained.  Petitioner has identified no defect in the relevant jury instructions.

2   Accordingly, there is no unreasonable application of U.S. Supreme Court precedent in the

3   conclusion that this evidence did not impair the fundamental fairness of the proceedings or the

4   reliability of the outcome.

5          For all these reasons, § 2254(d) forecloses relief on this claim.

6                                        CONCLUSION

7          For all the reasons explained above:

8          IT IS HEREBY ORDERED that the Clerk of Court correct the docket to reflect the

9   substitution of Patrick Covello as respondent.

10         IT IS FURTHER RECOMMENDED that the petition for writ of habeas corpus be denied.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

16  he shall also address whether a certificate of appealability should issue and, if so, why and as to

17  which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

18  within fourteen days after service of the objections.  The parties are advised that failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: October 2, 2020

22                                    _____
                                       ALLISON CLAIRE
23                                     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28